IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MELVIN BERNARD THOMPSON,
    Plaintiff,

v.                                      Case No.  5:09cv73/RS/EMT

MONICA McCALL WINDSOR,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

    Plaintiff Melvin Bernard Thompson ("Thompson") proceeds pro se and in forma pauperis in this action brought pursuant to 42 U.S.C. § 1983.  Presently before the court is the motion for summary judgment filed by Defendant Monica McCall Windsor ("Windsor") (Doc. 101).  Thompson filed a response in opposition to the motion for summary judgment, as well as a memorandum of law, which includes a statement of material facts as to which he contends there exists a genuine issue to be tried, and supporting evidentiary material (Docs. 161, 163).  Also before the court is Thompson's "Belated-Refiled Amended Motion for Emergency Temporary Injunction" (Doc. 99), and Windsor's response in opposition (Doc. 102).  As set forth below, the court recommends that Windsor's motion for summary judgment be granted in part and Thompson's motion for temporary relief be denied.

I.    BACKGROUND

    Thompson, an inmate of the Florida Department of Corrections ("DOC"), initiated the action by filing a civil rights complaint on March 6, 2009 (Doc. 1 at 48).[1]  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

regarding dispositive motions. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). In the Third Amended Complaint (Doc. 59), which is the operative pleading in this case, Thompson asserts that Windsor was deliberately indifferent to his medical need for replacement soft shoes, in violation of the Eighth Amendment (*id.* at 5–12). Thompson sues Windsor in both her individual capacity and her official capacity as Health Services Administrator ("HSA") at the Annex of the Northwest Florida Reception Center ("NWFRC") (also known as Washington Correctional Institution) from March 2007 to April of 2009, and Acting HSA of the Main Unit of the NWFRC from December of 2007 through March of 2008 and again in October of 2008 (Doc. 59 at 2; Doc. 101 at 1). As relief, Thompson seeks injunctive and declaratory relief, compensatory and punitive damages, nominal damages, and costs (Doc. 59 at 12).

On January 11, 2010, Thompson filed a motion for temporary injunctive relief (Doc. 99). On January 25, 2010, Windsor filed a response in opposition to Thompson's motion (Doc. 102). Windsor also filed a motion for summary judgment with an incorporated statement of undisputed facts and supporting memorandum, as well as summary judgment materials (Doc. 101), which she contends show there is an absence of evidence of denial of adequate medical care. The court issued an advisement order informing the parties of the importance and ramifications of summary judgment consideration and provided them with information as to the requirements for materials submitted for Rule 56 review (Doc. 105). Thompson filed a response in opposition to the motion for summary judgment, as well as a memorandum of law, which includes a statement of material facts as to which he contends there exists a genuine issue to be tried, and supporting evidentiary material (Docs. 161, 163, Ex. A-1). Windsor filed a reply, and Thompson filed a cross-reply (Docs. 175, 176).

II. OBJECTIONS RAISED IN WINDSOR'S REPLY

The undersigned will first address Windsor's objections to Thompson's response to the motion for summary judgment. Windsor first objects to numerous statements from third parties included in Thompson's affidavit (specifically, statements by third parties included in paragraphs 50–52, 59, 67, 75, 80, 81, and 91 of Thompson's affidavit) on the ground that the statements are unsupported by the record he provided (*see* Doc. 175 at 4–5). In her second and third objections, Windsor objects to Thompson's raising new constitutional claims in his response, namely, claims

of retaliation and denial of pain medication and orthopedic surgery (*id.* at 5). Lastly, Windsor objects to Thompson's requests for specific injunctive relief included in his response to the motion for summary judgment (*id.*).

With regard to Windsor's first objection, as will be demonstrated *infra*, consideration of the third party statements is not necessary for disposition of the motion for summary judgment; therefore, it is unnecessary to address Windsor's objection to the third party statements in the context of this summary judgment proceeding. Regarding Windsor's objections to Thompson's attempt to raise new constitutional claims in his response, namely, claims of retaliation and denial of pain medication and surgery, the court notes that Thompson has clarified that he is <u>not</u> raising an independent Eighth Amendment claim of denial of adequate medical treatment with regard to pain medication and orthopedic surgery (*see* Doc. 176 at 14–15). To the extent Thompson attempts to raise a First Amendment claim of retaliation, such claim is not properly before the court, since Thompson did not raise a First Amendment claim of retaliation in his Third Amended Complaint (*see* Doc. 59). *See, e.g*, <u>Austin v. City of Montgomery</u>, 196 Fed. Appx. 747, 753 (11th Cir. 2006) (claim raised for first time in plaintiff's response to defendant's motion for summary judgment is not properly before the district court). With regard to Windsor's objection to Thompson's requests for specific injunctive relief, in light of the court's conclusion that there exists a triable issue as to whether a constitutional violation occurred, as discussed *infra*, the court will not address Thompson's entitlement to specific forms of injunctive relief at this time (except Thompson's request for temporary injunctive relief).

III. MATERIAL FACTS

The following facts are viewed in the light most favorable to Thompson or, except as noted, are undisputed.[2] On February 13, 2006, M. Wilson, an Advanced Registered Nurse Practitioner

---

[2] As this case comes before the court on Windsor's motion for summary judgment, the court views the facts in the light most favorable to Thompson as the non-moving party, *see* <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993), drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. *See* <u>Montount v. Carr</u>, 114 F.3d 181, 182 (11th Cir. 1997). Additionally, any facts included in Windsor's statement of undisputed material facts that are not controverted by Thompson's statement of facts are deemed admitted. *See* N.D. Fla. Loc. R. 56.1(A) (all material facts set forth in moving party's statement of undisputed material facts will be deemed admitted unless controverted by statement required to be filed and served by opposing party).

Case No. 5:09cv73/RS/EMT

("ARNP"), provisionally diagnosed Thompson with plantar fasciitis in both feet and recommended that he receive a consultation for orthotics for both feet (Doc. 163, Ex. B-28). On August 11, 2006, a medical consultant recommended semi-rigid orthotics for both feet (*see* Doc. 163, Ex. B-30(a)). On September 18, 2006, Dr. Page A. Smith approved the issuance of the orthotics (Doc. 101 at 6, Ex. C; Doc. 163, Ex. B-31), and Thompson received semi-rigid orthotics for both feet and a pair of size 12E Saucony soft shoes, model 996-8, on September 22, 2006 (Doc. 101 at 6, Ex. D; Doc. 163, Exs. B-32, B-33).

Over one year later, on October 13, 2007, Thompson requested a replacement pair of size 12½ EE soft shoes because his shoes were breaking apart (Doc. 101 at 6, Ex. E; Doc. 163, Ex. B-36). On October 16, 2007, Ms. Amy Street, Senior HSA, sent Thompson's chart to Dr. Ciungu, the Chief Health Officer ("CHO") at Thompson's institution (Doc. 163, Ex. B-37). Pursuant to DOC policy, it is the assigned HSA's responsibility to respond to medically-related inmate requests and informal grievances, and if a doctor or ARNP orders the requested medical care, to forward the prescription to the Reception and Medical Center ("RMC), where the prescription is filled (Doc. 101 at 6). On October 16, 2007, Dr. Ciungu approved the purchase of a new pair of soft shoes (*id.*). On October 17, 2007, Ms. Street informed Thompson that his shoes had been ordered (Doc. 101 at 6; Doc. 163, Ex. B-36). Ms. Street obtained a pair of size 12W soft shoes and issued them to Thompson on October 24, 2007 (Doc. 101 at 6, Ex. F; Doc. 163, Ex. B-39, B-40). Thompson signed a statement acknowledging his receipt of size 12W athletic shoes and acknowledging that replacement of the shoes would be his personal obligation if such was needed in less than one year (Doc. 163, Ex. B-40).

On November 29, 2007, Thompson submitted a grievance to Windsor complaining that his feet slipped out of the new shoes upon his inserting his orthotics in them, and the shoes were not sufficiently shock-absorbent (Doc. 101 at 6; Doc. 163, Ex. C-1; Doc. 163, Def.'s Resp. to Pl.'s Req. for Admiss. #2.j.). On November 30, 2007, Windsor responded as follows:

> Shoes were received on October 24, 2007. You are allowed one pair of shoes per year. A replacement pair may be purchased at your own expense. You may submit a new inmate request, if you have funds available for shoe purchase.

(Doc. 101 at 6, Ex. G; Doc. 163, Ex. C-1). Technical Instruction No. 15.02.06 of the DOC's Office of Health Services, defines soft shoes as tennis shoes, sneakers, running shoes, and athletic shoes, and it provides that soft shoes may be issued by the medical department if they are to be used with a specific orthotic device (Doc. 151, Ex. A). The Instruction further provides:

> In the event that an inmate may require shoe replacement within one (1) year following initial receipt of the shoes and may not be able to obtain shoes at her/his own expense, the chief health officer/medical executive director will carefully evaluate the circumstances involved and may prescribe replacement shoes as an exception to the policy. In such cases, the chief health officer/medical executive director will properly record the conditions which warranted an exception to this technical instruction on DC4-774 [the form an inmate signs when he acknowledges receipt of therapeutic shoes] under <u>extraneous circumstances</u> [the form includes a section marked "Extraneous circumstances (if reissued within one year)"].

*id.*). Thompson appealed Windsor's response by submitting a formal grievance, Log Number 0712-110-039 (Doc. 101 at 7, Ex. H; Doc. 163, Ex. C-4). It was Windsor's duty and responsibility as the assigned HSA to ensure that inmate requests, informal grievances, and formal grievances were answered for the health services department in accordance with DOC rules and procedures (Doc. 163, Appx. 1). Windsor investigated Thompson's formal grievance and noted "Consultation process initiated on 12/5/07" (Doc. 163, Ex. C-4; Doc. 163, Def.'s Resp. to Pl.'s Second Set of Interrog. #6). On December 10, 2007, Windsor formulated a response to Thompson's appeal stating that the appeal should be returned to Thompson without action because the medical department had already rendered a decision on the issue (Doc. 163, Exs. C-2(b), C-4; Doc. 163, Def.'s Resp. to Pl.'s Second Set of Interrog. ##6–8, 14). Windsor did not consult with Dr. Ciungu prior to formulating her response (Doc. 163, Def.'s Resp. to Pl.'s First Set of Interrog. #7). Dr. Ciungu and the Assistant Warden approved Windsor's response and denied Thompson's appeal (Doc. 101 at 7; Doc. 163, Exs. C-2, C-2(a); Doc. 163, Def.'s Resp. to Pl.'s Second Set of Interrog. ##6–8, 14).

On December 12, 2007, Ms. June Jackson, a Secretary Specialist at the NWFRC who worked directly with Dr. Ciungu, notified Windsor that Dr. Ciungu had requested the purchase of Spot Bilt shoes for Thompson (Doc. 163, Def.'s Resp. to Pl.'s Second Set of Interrog. #9; Doc. 163, Ex. C-3). Ms. Jackson provided Windsor such notification by giving her Thompson's medical chart, which included an entry stating that the CHO had requested that Spot Bilt shoes be purchased for

Thompson (*id.*).  It was Windsor's duty and responsibility to approve all purchases for the health service department (Doc. 163, Appx. 1).  Windsor placed a telephone call to Mrs. Richardson at the RMC warehouse to inquire about the procedure for obtaining shoes from the warehouse, but Richardson was out of her office, so Windsor left a message (Doc. 163, Ex. C-3; Doc. 163, Def.'s Resp. to Pl.'s Second Set of Interrog. #26).  Windsor learned that the procedure for acquiring shoes from the RMC warehouse was the following:  (1) a doctor wrote an order for shoes, (2) the order was faxed by the HSA or the doctor's secretary to the warehouse, and (3) the warehouse sent the shoes to the requesting institution (Doc. 163, Def.'s Resp. to Pl.'s Second Set of Interrog. #16).  Windsor did not take any other action on Dr. Ciungu's request because the request was verbal, not written, and Windsor did not believe it was her responsibility to ensure that Dr. Ciungu followed-up on his verbal requests (Doc. 163, Def.'s Resp. to Pl.'s Second Set of Interrog. ##11, 13).

On January 16, 2008, Dr. Ciungu requested a consultation for Thompson in the brace clinic at RMC to be fitted for semi-rigid orthotics and size 12E soft shoes, which was forwarded for approval to the Utilization Management ("UM") department on March 21, 2008 (Doc. 101 at 6, Ex. I; Doc. 163, Ex. C-7).  On March 26, 2008, Dr. Thayer, the Region II Physician Advisor Committee Chairman, denied the request for consultation, on the ground that soft shoes could be provided by Thompson's institution (Doc. 101 at 7, Ex. J; Doc. 163, Ex. C-16).

On June 28, 2008, Thompson submitted a letter to Dr. Thayer requesting that he reconsider the denial of a brace clinic consultation and approve issuance of a replacement pair of size 12E Spot Bilt tennis shoes (Doc. 101 at 8, Ex. L).  On July 9, 2008, Dr. Thayer responded as follows:

> I have reviewed your letter of 6/28/2008.
> . . . .
> Your discussion is appropriate and reasonable.  Your institution has the ability to order Dr. Comfort or similar shoes.  If you are receiving "Bobos" or similar and being told that satisfies the recommendation, then that is not the intent of medical services.  The intent is to provide appropriate, but cost effective care.
>
> I recommend that you discuss this with your providers at Washington CI.

(Doc. 101 at 8, Ex. M).

On July 9, 2008, Thompson filed a formal grievance, Log Number 0807-125-013, complaining that Dr. Ciungu had ordered Windsor to purchase Spot Bilt shoes on December 5, 2007,

but Windsor had failed to do so (Doc. 101 at 8, Ex. N; Doc. 163, Ex. C-19). In the grievance, Thompson complained that he suffered from diabetic neuropathy in both feet, and the shoes he was currently wearing did not fit his feet properly (*id.*). He also complained that the UM department had refused him a consultation in the brace clinic because the institution could provide replacement shoes (*id.*). On July 14, 2008, Windsor formulated a response to the grievance stating that the grievance should be denied because there was no order in Thompson's medical file from Dr. Ciungu for medical soft shoes and, per the DOC's technical instructions, Thompson's neuropathy and flat feet did not qualify him for a soft shoe (Doc. 163, Exs. C-19, C-19(a), C-19(b), C-19(c); *see also* Doc. 163, Def.'s Amended Resp. to Pl.'s Second Set of Interrog. #14). Windsor reviewed Thompson's medical file and the technical instructions in formulating her response, but she did not consult with anyone (Doc. 163, Def.'s Amended Resp. to Pl.'s Second Set of Interrog. #14). Dr. Syed, who replaced Dr. Ciungu as CHO, and the Assistant Warden approved Windsor's response and denied Thompson's grievance (Doc. 101 at 8; Doc. 163, Ex. C-19(b)).

On July 25, 2008, Thompson filed another grievance with Windsor, reminding her that Dr. Ciungu had requested purchase of size 12E Spot Bilt shoes for him on December 7, 2007, to replace the shoes that had been provided to him on October 25, 2007 (Doc. 101 at 9, Ex. O; Doc. 163, Ex. C-22). Thompson informed Windsor that the shoes purchased in October of 2007 did not fit properly, did not absorb shock to his permanently damaged knees, and caused him constant pain due to the neuropathy and plantar fasciitis in his feet and osteochondritis (Doc. 163, Ex. C-22; Doc. 163, Def.'s Resp. to Pl.'s Req. for Admiss. #2.j.). Thompson requested that Windsor order or purchase a pair of size 12E Spot Bilt or Dr. Comfort shoes (*id.*). On July 31, 2008, Windsor responded that the health services department had already purchased a pair of soft shoes for him in October of 2007, which were still in his possession, and no new shoes would be provided to him (Doc. 101 at 9, Ex. P; Doc. 163, Ex. C-22).

On August 5, 2008, Thompson filed another grievance with Windsor stating that the size 12E soft shoes he had received in October of 2007 were too tight, did not absorb shock, were falling apart at the toes, and were decaying on the bottoms due to water invasion (Doc. 101, Ex. Q; Doc. 163, Ex. C-25; Doc. 163, Def.'s Resp. to Pl.'s Req. for Admiss. #2.j.). Thompson further advised Windsor

in the grievance that the Canteen Quarterly Order Form did not have size 12E shoes available for purchase, and he attached the order form to his grievance (Doc. 101, Ex. Q; Doc. 163, Def.'s Res. to Pl.'s Req. for Admiss. #1.BB; Doc. 163, Exs. C-25, C-25(a)). Thompson offered to ask his family to purchase size 12E shoes and gel insoles and send them to Windsor for her approval (*id.*). Thompson asked Windsor to either order replacement shoes through the medical department or allow his family to purchase them (*id.*). Windsor responded that Thompson's options were to continue wearing his current shoes or purchase shoes from the canteen (Doc. 101 at 9, Ex. Q; Doc. 163, Exs. C-25, C-25(b)).

On August 12, 2008, Dr. Thayer responded to another letter from Thompson dated August 1, 2008 (Doc. 101 at 10, Ex. S). Dr. Thayer wrote the following, in relevant part:

> I have reviewed your letter of 8/1/08.
>
> Your consult to brace clinic was appropriately denied as being medically unnecessary. It is the responsibility of the institution to provide appropriate footwear as they determine is necessary. Your request to have shoes sent to the institution is against Department policy.

(*id.*; Doc. 163, Ex. C-26).

On October 29, 2008, Thompson appealed Dr. Thayer's denial (in March of 2008) of Dr. Ciungu's request for a brace clinic consultation, by filing a formal grievance, Log Number 0810-125-032 (Doc. 101 at 10, Ex. T; Doc.1 63, Ex. C-31(a)). On November 5, 2008, Windsor formulated a response to the grievance stating that the grievance should be denied because it was filed more than fifteen (15) days after the date of the incident which was the subject of the grievance (Doc. 163, Exs. C-31(b), C-31(c); *see also* Doc. 163, Def.'s Amended Resp. to Pl.'s Second Set of Interrog. #14). Windsor reviewed Thompson's medical file in formulating her response, but she did not consult with anyone (Doc. 163, Def.'s Amended Resp. to Pl.'s Second Set of Interrog. #14). On November 19, 2008, Dr. Rummel, Medical Executive Director of the Regional Health Services, denied the grievance, stating that the brace clinic consultation was denied in March, and Thompson could access sick call as needed (Doc. 101 at 10, Ex. T).

On December 7, 2008, Thompson submitted another inmate request to the HSA for a replacement pair of Spot Bilt or Dr. Comfort shoes (Doc. 101 at 11, Ex. V). On December 12, 2008,

Mr. Calhoun denied the request, stating that Thompson would be re-evaluated by an ARNP for referral to the brace clinic to determine his suitability for special shoes (*id.*). On December 15, 2008, Ms. K. Carroll, an ARNP at Thompson's institution, and Dr. Richardson, the CHO at NWFRC, recommended a brace clinic consultation, which was forwarded to the UM department (Doc. 101 at 11, Ex. W). The UM department denied the request on January 15, 2009 (*id.*). On January 15, 2009, Ms. Carroll completed a Physician's Order Sheet for a pair of size 12E Spot Bilt or Dr. Comfort shoes to be purchased for or issued to Thompson (Doc. 163, Ex. 39(b)). On January 19, 2009, Thompson submitted a formal grievance, Log Number 0901-110-119, requesting the shoes (Doc. 101 at 11, Ex. X). On February 16, 2009, Dr. Richardson denied the grievance because the order to issue the shoes was written prior to the grievance, and Thompson was "scheduled for call out to complete the process and obtain shoes" (Doc. 101 at 11, Ex. X). On April 7, 2009, Dr. Richardson completed a Physician's Order Sheet for a pair of size 12E Spot Bilt or Dr. Comfort shoes with insoles (Doc. 101 at 11, Ex. Y; Doc. 163, Exs. D-5, D-6). On July 10, 2009, Dr. Richardson directed Mr. Calhoun to process the previous order for shoes (*see* Doc. 163, Exs. D-11, D-11(a)). Thompson received size 12EE Dr. Comfort soft shoes, model 996-8, on August 24, 2009 (Doc. 101 at 12, Ex. BB; Doc. 163, Ex. D-20).

IV. LEGAL STANDARDS

    A. <u>Summary Judgment Standard</u>

In order to prevail on her motion for summary judgment, Windsor must show that Thompson has no evidence to support his case or present affirmative evidence that Thompson will be unable to prove his case at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Windsor successfully negates an essential element of Thompson's case, the burden shifts to Thompson to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248.

A fact is "material" if it "might affect the outcome of the suit under the governing law." Id. Thompson must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. Celotex Corp., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Thompson must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. Celotex Corp., supra; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting Celotex Corp., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e))); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Thompson in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, Thompson still bears the burden of coming forward with sufficient evidence of every element that he must prove. Celotex Corp., 477 U.S. at 317. A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322.

      B.      Eighth Amendment – Deliberate Indifference to Medical Need

It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners. Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991). Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Id. at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or

malpractice do not rise to the level of constitutional violations.  *Id.* (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component.  <u>Taylor v. Adams</u>, 221 F.3d 1254, 1257 (11th Cir. 2000).  First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'"  *Id.* (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)).  Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment.  *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. <u>Taylor</u>, 221 F.3d at 1258.  As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need."  <u>Estelle</u>, 429 U.S. at 104.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  <u>Hill v. DeKalb Regional Youth Detention Center</u>, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* <u>Hope v. Pelzer</u>, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm.").  In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain."  <u>Estelle</u>, 429 U.S. at 105–06 (internal quotation marks omitted); *see* <u>Taylor</u>, 221 F.3d at 1257; *see also* <u>Adams v. Poag</u>, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference."  <u>Estelle</u>, 429 U.S. at 105.  "Deliberate indifference has three components:  (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  <u>Farrow v. West</u>, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999) and <u>Taylor</u>, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively

serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

A delay in providing medical treatment can constitute deliberate indifference. Estelle, 429 U.S. at 104–05. However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Townsend v. Jefferson County, 582 F.3d 1252, 1259 (11th Cir. 2009).

    C.    Eleventh Amendment Immunity

The Eleventh Amendment is an absolute bar to suits for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities. Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); Edelman v. Jordan, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 1355–56, 39 L. Ed. 2d 662 (1974). Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits a suit against a state in federal court. Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Florida has not waived its Eleventh Amendment immunity from suit in federal court. See Fla. Stat. § 768.28(17). Furthermore, Congress did not intend to abrogate a state's Eleventh Amendment immunity in § 1983 damage suits. Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490 (11th Cir. 1995). Florida has not waived its sovereign immunity or consented to be sued in damage suits brought pursuant to § 1983. See Gamble v. Fla. Dep't of Health & Rehabilitative Servs., 779 F.2d 1509, 1513 (11th Cir. 1986).

D.   Qualified Immunity

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). This doctrine is intended to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, --- U.S. ----, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).

In Saucier v. Katz, the Supreme Court mandated a two-step process for lower courts to follow in resolving qualified immunity claims. 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). First, the court had to decide whether the facts that the plaintiff alleged showed a violation of a constitutional right. *Id.* Second, if the plaintiff satisfied the first step, the court had to determine whether "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 129 S. Ct. at 816 (quoting Saucier, 533 U.S. at 201, 121 S. Ct. 2151).

The Supreme Court revisited Saucier's mandatory two-step inquiry in Pearson. *Id.*, 129 S. Ct. at 815–18. The Court held that while the Saucier process is often appropriate, "it should no longer be regarded as mandatory"; rather, "[t]he judges of the district courts and the court of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

V.   DISCUSSION

Windsor contends Thompson's request for injunctive relief is moot, since he received a pair of replacement orthopedic shoes on August 24, 2009 (Doc. 101 at 13). She additionally contends she is immune from liability for monetary damages to the extent she is sued in her official capacity, pursuant to the Eleventh Amendment (*id.* at 12–13). Regarding Thompson's claims for monetary damages against her in her individual capacity, Windsor contends she is entitled to qualified immunity because the evidence shows that Thompson will be unable to prove a constitutional

violation at trial (*id.* at 17–22). Windsor contends Thompson will be unable to satisfy the objective element of the Eighth Amendment standard, that is, that he had a serious medical need, or that Windsor's handling of his request for replacement orthopedic shoes was so deficient as to constitute an unnecessary and wanton infliction of pain (Doc. 101 at 17–18, 19–20). Windsor also contends Thompson will be unable to prove the subjective component, that is, that Windsor was subjectively aware of any facts suggesting that Thompson's medical issues could or would deteriorate if he did not receive replacement orthopedic shoes or orthotic inserts, or that she denied his request for shoes as a means of punishing him (*id.* at 18–19). Finally, Windsor contends Thompson is not entitled to declaratory relief in light of his failure to establish a constitutional violation (*id.* at 22).

Viewing the evidence in the light most favorable to Thompson, Thompson has come forward with sufficient evidence to demonstrate a genuine issue of material fact as to whether his need for Spot Bilt or Dr. Comfort shoes was a serious medical need for Eighth Amendment purposes. The entry in Thompson's medical records dated December 12, 2007, stating that Dr. Ciungu requested that Spot Bilt shoes be purchased for Thompson, is evidence from which a reasonable jury could infer that Thompson had a medical condition which was diagnosed by a physician as mandating treatment.

Additionally, Thompson has demonstrated a genuine issue of material fact as to whether Windsor's response to his medical need was so deficient as to constitute "an unnecessary and wanton infliction of pain," and whether Windsor acted with an attitude of deliberate indifferent. Thompson submitted evidence that Windsor was notified on December 12, 2007, by Dr. Ciungu's assistant that Dr. Ciungu had requested that Spot Bilt shoes be purchased for Thompson, and Windsor responded by calling the RMC warehouse to order the shoes. According to Windsor, she learned that a written order from Ciungu was required to process the order; however, she did not communicate that to Dr. Ciungu. Although Windsor stated in her response to one of Thompson's interrogatories that she ensures that inmates receive prescribed medical care by forwarding orders to the RMC when a medical provider orders medical care and consulting with the provider when there is no such order (*see* Doc. 163, Def.'s Resp. to Pl.'s First Set of Interrog. #8), the evidence shows that Windsor did not consult with Dr. Ciungu after she learned that she could not order Thompson's shoes without a

written order. Furthermore, Windsor did not consult with Dr. Ciungu when the issue was again brought to her attention through Thompson's informal and formal grievances, to which Windsor personally responded or prepared responses for others' signatures in July 2008, August 2008, and October 2008. Moreover, Windsor knew, by virtue of Thompson's grievances, that he suffered from neuropathy and plantar fasciitis in his feet and osteochondritis, that the shoes provided to him in October of 2007 were too tight, did not absorb shock to his knees, caused him constant pain, were falling apart at the toes, and were decaying on the bottoms due to water invasion. She also knew that Thompson was not be able to obtain shoes in his size from the canteen. Despite her knowledge that Spot Bilt or Dr. Comfort shoes were readily available from the RMC, and that all that was required to place the shoe order was a written order from Dr. Ciungu, Windsor failed to take any steps to effectuate Dr. Ciungu's verbal order for the shoes. From this evidence, a reasonable jury could infer that Windsor's response to Thompson's medical need for the shoes was so deficient as to constitute "an unnecessary and wanton infliction of pain," and that her conduct evinced an attitude of deliberate indifference.

Finally, Thompson has produced sufficient evidence to demonstrate a genuine issue of material fact as to whether he suffered a detrimental effect from Windsor's failure to order replacement shoes, as evidenced by his medical records documenting his complaints of and treatment for pain.

Based upon the foregoing, Thompson has demonstrated that genuine issues of material fact exist as to whether Windsor was deliberately indifferent to a serious medical need. In light of this conclusion, Windsor is not entitled to qualified immunity with respect to Thompson's claims for monetary damages against Windsor in her individual capacity. Likewise, Thompson's claims for declaratory and injunctive relief are not foreclosed. However, Windsor is immune from liability for Thompson's claims for monetary damages against her in her official capacity, pursuant to the Eleventh Amendment.

VI.   THOMPSON'S MOTION FOR TEMPORARY INJUNCTIVE RELIEF

In his motion for a temporary injunction, filed January 6, 2010, Thompson states from August through December of 2009, he was transferred between the RMC Main Unit and the RMC West Unit for no medical reason (Doc. 99 at 1–4). He states he believes that the transfers were in retaliation for his filing grievances and the instant lawsuit and were intended to hinder his ability to effectively litigate the instant case (*id.*). Thompson states he has suffered adverse physical effects from the transfers, including the following: (1) injuries to his wrists and hands due to his having to lift, pull, push, and carry his personal property (including legal work), which weighed 45–50 pounds, (2) pain in his knees from climbing three flights of stairs when he was housed at the RMC Main Unit, and (3) a lack of continuity in receiving prescribed medication, including insulin injections and pain medication (*id.* at 4–8). Thompson additionally states the transfers adversely affected his ability to effectively litigate this case because his receipt of documents from the court and opposing counsel was delayed, and he did not have adequate access to a law library or his legal documents (*id.* at 8–9). Finally, Thompson states he suffered adverse mental effects from the transfers, including emotional distress from living in constant fear of retaliation, which he describes as "living in . . . a proverbial hell" (*id.* at 10).

Thompson requests that the court grant him the following temporary injunctive relief: (1) an order requiring prison officials to house him at the RMC until he has received all medical care that is required to treat injuries to his knees and wrist, and enjoining prison officials from transferring him to any other institution; (2) an order requiring prison officials to ensure that he receives his legal mail in a timely fashion and has unhindered access to a law library; (3) an order enjoining prison officials from destroying, losing, or mishandling any of his legal documents related to this litigation; and (4) an order enjoining prison officials from condoning any retaliatory actions against him by medical, administrative, or security personnel (Doc. 99 at 10–11). Alternatively, Thompson requests the appointment of counsel (*id.* at 11).

Windsor opposes Thompson's motion on the ground that before Thompson may seek civil injunctive relief, he must exhaust available administrative remedies (Doc. 102). Windsor contends Thompson has not done so; therefore, he is not entitled to injunctive relief or an expedited administrative process (*id.*).

The purpose of preliminary injunctive relief is to preserve the status quo between the parties and to prevent irreparable injury until the merits of the lawsuit itself can be reviewed. *See* Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994). The grant or denial of preliminary injunctive relief rests in the discretion of the district court. *See* Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997) (citation omitted). The district court, however, must exercise its discretion in light of whether:

1. There is a substantial likelihood that Plaintiff will prevail on the merits;

2. There exists a substantial threat that Plaintiff will suffer irreparable injury if the injunction is not granted;

3. The threatened injury to Plaintiff outweighs the threatened harm injunction will do to the defendant; and

4. The granting of the preliminary injunction will not disserve the public interest

*See* CBS Broadcasting, Inc. v. Echostar Communications Corp., 265 F.3d 1193, 1200 (11th Cir. 2001) (citation omitted); Carillon Importers, Ltd., 112 F.3d at 1126. "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." CBS Broadcasting, Inc., 265 F.3d at 1200 (citation omitted). Injunctions should be granted for definite, future injuries, not conjectural ones. Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994).

Further, the purpose of preliminary injunctive relief is to preserve the status quo between the parties and to prevent irreparable injury until the merits of the lawsuit itself can be reviewed. Devose, 42 F.3d at 471; All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc., 887 F.2d 1535, 1537 (11th Cir. 1989) (citations omitted). This requires that the relief sought in the motion be closely related to the conduct complained of in the underlying complaint. Devose, *supra*; Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1185 (10th Cir. 1975). Also, the persons from whom injunctive relief is sought must be parties to the underlying action. *See* In re Infant Formula Antitrust Litigation, MDL 878 v. Abbott Laboratories, 72 F.3d 842, 842–43 (11th Cir. 1995) (court lacks subject matter jurisdiction to issue preliminary or permanent injunction against non-party);

*see also* Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc., 96 F.3d 1390, 1394 (5th Cir. 1996) (district court not authorized to grant injunctive relief against non-parties).

Initially, Thompson has failed to establish that Windsor, who is the sole Defendant in this action and now currently assigned as Operations and Management Consultant II at the NWFRC (*see* Doc. 101, Ex. B, Affidavit of Monica McCall Windsor, ¶ 1), has authority to effectuate the temporary injunctive relief he seeks. Furthermore, and most important, Thompson has failed to satisfy his burden of persuasion as to whether he will suffer irreparable injury if the injunction is not granted. Throughout the course of this litigation, Thompson has actively and effectively litigated this case, even during the period he was subjected to numerous transfers. Therefore, Thompson's motion for temporary injunctive relief should be denied.

VII. CONCLUSION

The undersigned concludes that Thompson has submitted sufficient evidence from which a reasonable juror could find that Windsor was deliberately indifferent to a serious medical need. However, Thompson is not entitled to all of the relief he seeks, namely, monetary damages against Windsor in her official capacity. Therefore, Windsor's motion for summary judgment should be granted only as to Thompson's claims for monetary damages against her in her official capacity. The motion for summary judgment should be denied in all other respects. The undersigned further concludes that Thompson's motion for temporary injunctive relief should be denied.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Defendant's motion for summary judgment (Doc. 101) be **GRANTED IN PART**. The motion should be **GRANTED only to the extent** that Plaintiff's claims for monetary damages against Defendant in her official capacity should be **DISMISSED** as barred by the Eleventh Amendment. Defendant's motion for summary judgment (Doc. 101) should be **DENIED in all other respects**.

2. That Plaintiff's "Belated-Refiled Amended Motion for Emergency Temporary Injunction" (Doc. 99) be **DENIED**.

At Pensacola, Florida this  9th day of July 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**