IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RECEPTION MEDICAL CENTER
DATE: 11-1-10
INMATE INITIALS: _____

Melvin Bernard Thompson
              Plaintiff-Prose

v                                            Case No. 5:09cv73 RS EMT

Monica MoCall Windsor
            Defendant

Plaintiff's Response in Opposition To Defendants
Second Motion For Summary Judgment

   Plaintiff Submits this Response to Defendants Second Motion For
Summary Judgment because defendant has failed to meet █ her
burden of demonstrating that there ███ is no dispute as to any Mat
erial fact, and because the facts set forth in plaintiffs Statement of Mat
erial facts in dispute,[1] and the attached evidence show that defendant viola
ted plaintiffs established Constitutional rights. Plaintiff files this Response
pursuant to: Orders of this Court:(Doc. 199, 203, 206, 216), Federal Rule of Civil
Procedure 56(e), and Northern District of Florida Loc. Rule 56(1)A. Plaintiff
hereby, also states, that based upon, the deliberate acts of indiffrence
Windsor exhibited (Doc. 178), that, the doctrine of Qualified Immunity
is not applicable to the defendant and this Court Should deny Defen-
dant's Second Summary Judgment (Doc. 218), See Memorandum of Law..

PRELIMINARY STATEMENT
   Plaintiff Thompson hereby an inmate in the Florida Dept. of Corrections
brought Civil Complaint §1983 against Monica McCall Windsor, Health Serv. Administrator-

N1: Similar to defendants incorporated undisputed Statement of Material facts (Doc 218
pp. 3-14. but see: in addition Plaintiff Seperately filed Statement of Material facts in dispute (Ex: ii)

1

at NWFRC- Formely Washington C.I. .

Plaintiff, eventually, presented this Court with (Doc. 59) Third Amended Complaint alleging Windsor was deliberately indifferent to his medical need for Failing to Take Corrective Action in providing Spot Bilt/Dr. Comfort replacement Shoes... Known -or erroneously known as Orthopedic Shoes. And sues Windsor in her individual capacity. (Doc. 59)

This Court eventually denied Windsors Initial Summary Judgment, but dismissed claims against Windsor in her Official Capacity only as it relates to Monetary Damage Awards (Doc. 178, 184, 192) Thompson seeks, specified injunctive Declartory, and alternatively certification of Class Action, Compensatory $75,000⁰⁰, punitive $500,000⁰⁰, Nominal $1⁰⁰ damage Awards, counter suit claims, fees, Court cost, (Doc. 59).

Plaintiff hereby, advises this Court that, per (Order 216) plaintiff Cross-refers to Exhibits on Record, (herein After Ex.Rec or RecEx) throughout this Motion in opposition To Second Summary Judg. (Doc. 218). Also, plaintiff, has included Supplemental Exhibit in support of this Motion in Opposition (here in after: Supp. Ex.), and has also Cross refrenced to Exhibits included within Doc 218 and its accompaning exhibits, Admissions on record, Depositions, Declarations,...etc.

## Plaintiff's Allegations

Thompson, has alleged that Windsor refused to take Corrective Actions in, providing him with the appropriate size Shoes, that absorb shock to prevent the substaintial Risk of Injury and to stop pain, caused by the 10/24/07 Shoes issued, and that, various Clinicians, had proscribed Medical Care to wit: Spot Bilt, Dr. Comfort, New Shoes, to be issued to plaintiff to replace the 10/24/07 shoes. But Windsor, refused to do so, Plaintiff Alleged that, his primary concern for the Shoes, were to prevent injury to

to his Knees, of which he suffers, from: Physician Diagnosed, Sever Osteo-chondritis Dessicans, Avasular Necrosis, Degenerative Joint Disease.

Plaintiff, has alleged that. Dr. Ioan Ciungu, **ARNP** Dowling. Dr. Peter Hienze Schaffer, ARNP Carrol (all Clinicians) prescribed for him to recieve replacement shoes, with a connection and continuation of ongoing prior-prescribed Medical Issued Shoes for various reasons. **See** (Doc. 59, Doc. 161 pp. 1-2)

The defendants have filed a Second Motion For Summary Judgment, that is, rife with out of ▉ context, statements, improperly joined Arguments, and irrelevant matters, and have submitted, *Third party self serving Affidavits* with re: Dr. Ciungu implausiable testimony in light of the Sufficient evidence presented ▉ on the Contrary by plaintiff.

Wherefore, plaintiff re-affirms, and respectfully request this Court, to *Take Judicial Notice* pursuant to **Rule 201 (a)(b),** of: (Doc. 100, 101, Doc 59, 161, 163, 163-1, 178, 184, 192, 194, 216) in it's review of this Motion In Opption To Second Summ. Judgment. and Judicial Notice of The, Admissions, Interrogatories, Affidavits, Depositions by Written Questions, Appendixes, Declarations on file with this Court, as proof that a reasonable Jury could infer that Windsor was deliberately indifferent to my serious Medical need, thus violating my 8th Amend. Constitutional Civil Rights.

## PLAINTIFF'S INCORPORATED STATEMENT OF MATERIAL FACTS INDISPUTE CONTROVERTING DEFENDANTS STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1: The defendant. has again presented this court with a time line of Undisputed Material facts **see** (Doc. 218 pp. 7-14 #(12 specfically)

13-32). That is incorrect, incomplete and does not accurately reflect what transpired in relation to this complaint. Below Thompson will bring forth with precision, Arguments, Inferences and Evidence conclusively disputing and contradicting the defendant's time line of Undisputed Material facts id.

**2.** But First, Thompson will address, and controvert, F.D.O.C. Special Shoe Policy, presented by Dr. Frank Johanson M.D., Assistant Secretary (Clinical) F.D.O.C. Office of Health Services, Windsor's Employee.

**3.** Plaintiff: "partially concede" to the F.D.O.C. Shoe policy, in that, it "may" be true in Form and Theory, as envisioned by the policymakers, at F.D.O.C. But in actual application at individual institutions, it is applied haphazardly, discrimitorily, and at the whim of Clinicians, and it is exceeded by the HSA's personel... whims. Also, the F.D.O.C. shoe policy is in and of itself unconstitutional, in that, it readily admits, to denying inmates Medical Care thats based upon - non-medical reasons, i.e: "Objective observable significant deformities must be viewed by Clinician" before an inmate can receive/be prescribed: "Theraputic or Soft Shoes. The Policy does not take into account, individuals, who may suffer from un-seen inward bodily deformities, that neccitate the wearing of: properly fitting, shock absorbent shoes, to minimize, pain and suffering, and the Substaintial Risk of harm and injury. Nor does it, confirm to the acceptable norms, of modern medical practice, with inmates, that may suffer from: Degenerative Joint, Muscle Diseases, Spinal Cord injuries, Herniated Disk etc, and Lower extremities, internal damage inside feet, ankles, Knees, Hips, etc See (Supp. Ex: A pp. 1- 40, Ex Rec.: Appendix 5 thru 9) (Deposition by Written Questions, Inmate: Carl Johnson, Questions and answers, ▆ pp. 2-9 # 3-4,5, 10, 11, 12, 13, 14, 15, : Glenn Spivey. Questions by Deps, pp. 2-5, Answers, pp. 2-15, # 1-30) (Julius Haylard Declaration pp. 1-5) Compare: (Doc. 218 pp. 3-7 @ # 1-9) (Doc. 218-2/222-1 Ex B. pp. 1-5 @ # 3-11) (Doc. 218-4 pp. 2-9 # 3,4,5, 6, 7.) cf. (Doc 218-3, pp. 1-2 Shoe Policy). (Ex Rec. A pp. 1-34) Richard Wrights Declaration) ▆ infra: ▆ Supp. Ex (j)

4

4. Notwithstanding the F.D.O.C. Shoe Policy cited by Dr. Ciunga, and Johanson (i.e. that an inmate must seek replacement Therapitic Shoes, via, Clinician (Doc 218 pp 3-7) At NWFRC, both main unit and Annex, the institutions' pattern of practice, policy or custom was for an Inmate to recieve Therapitic Replacement shoes, he must send an inmate request to the Dept. of the Health Service Administrator to recieve the shoes. See (Supp. Ex A pp. 9 @ # 15-16 p 10, # 18-21, p. 11 @ # 23-27, p 12 @ # 28-29, p. 18 @ # 44). Also See: (Johnsons, Deposition by Written Question, Spivey Depo by Written Question: Johnson: Q-A # 3, 4, 5, 7, 10, 11, 13, 15. Spivey Q-A: # 1, 3 at # 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21-30; see: Julius Haylards Declaration p. 1-5)

5. Also, in conjunction with NWFRC- Medical Dept, I also under Policy suffered, disciminatory, denial of shoes and orthotics, at the hands of ARNP Clinician Wilson see (Supp Ex A pp. 1-8, at # s 1-14 specifically p. 6 @ # 15) Here, I was denied neccesary medical needs, based upon... non-medical reasons, and it turned out, that I did suffer, emotionally and physically. But Policy infringed upon my right to care.

6. Albeit, F.D.O.C. Shoe policy may be "true in form and Theory," it is also true that I do suffer from a Serious, painful in nature Medical condition, that has required and does at this time require, and will in the future require me to wear the appropriate size and shock absorbent Shoes, it is called: Osteo Chondritis Desicans Right Knee, Avascular Necrosis Left Knee, and has been diagnosed by both Free World Civilian Specialist in Orthopedic, and F.D.O.C See: (Supp Ex A pp 1-2 @ # 1-3, pg 9 @ # 17): compare: (Supp Exs): C-38 / C-3, 5, 9, 24-26 @ (generally C-1-41))

7. It is also undisputed that, Windsor was aware of this Condition, so was cln. other clinicians, Dr. Peter Hienze Schaffer, ARNP Dowling, Nurse Wynn (and Dr. Ciunga even though he may have chosen to issue the 10/27/07 shoes for Diabetes, he was made aware of this Serious Medical condition via, The 10-13-07, request and, as he states, the 12-1-07 grievance, see (Ex Rec. B-36-38), prompted him, to seek out how to obtain spot Bilts (Def Ex D) to replace the 10/24/07 shoes.

8. Futhermore, Pursuant to F.D.O.C. Shoe policy (Doc. 218 pp. 3-7 @ # 1-9) plaintiff avers that he did in fact meet this Criteria," clinician within health serv. Dept. of inmates institution can prescribe a pair of special ▓▓▓▓ Therapeutic shoes such as orthopedic or soft shoes, to be worn by the inmate when he or she has a special health related situation where the typical shoes issued by the FDOC cannot be used. cf: (Supp. Ex. A pp. 1-40 @ # 1-9), cf: (Ex Rec C-21) where Dr. Thayer, clearly states in response to my letter (Rec Ex C-17) that it is not medical intent, to have me wear Bobos or similar. cf: (Doc. 218 @ p. 5 # 5, 6) cf (Ex Rec A pp. 1-34)

9. The defendant has admitted that it is F.D.O.C. Policy to deny an Inmate prescribed care, based upon the fact of, "acknowledging receipt of shoes, and requesting a pair in less than 2 months after initial receipt. This policy is unconstitutional. see (Doc. 218 p. 6 # 7) Dr. Johanson, and Dr. Ciunge, states that my request for replacement shoes on 11-29-07, was "suspect" in the mind of HSA Windsor, when I had just received a pair less than 2 months ▓ earlier. See (Doc. 218 p. 6-7 @ # 9-10) However, I dispute this by stating, that: 1) I made a reasonable request, within the appropriate time frame given the fact that I was transferred 200 miles away from NWFRC, the very next day after receipt of shoes, and it was physically impossible to return the 10-24-07 shoes on 10-25-07. See (Def. Ex: F00005 FDOC Transfer history) However, upon my return on 11-28-07, I immediatly informed HSA Windsor/street of the problems with the 10/24/07 shoes. Nor did I say the shoes were deteriorated. See (Supp. Ex A pp 10-12 @ #'s: 20-27)    In fact if Defendant Windsor, thought I was lying to her/staff she could have called me to her office to inspect the shoes. Futhermore she could have Notified/Alerted/or consulted w/ a Medical provider to have me called in to view the shoes. She choose to do neither. See Plaintiff's Interrogatories: # 1 pp. 3  @ #'s 7-8). (Interog. # 3 pp. 1-3, # 1,18) (Interogatory # 2 pp. 2-11 @ #'s 1(i)(ii)(iii), 2, 3(a)(b), 5, 6-8, 9(a)(b), 10, 11, 13) cf (Doc 178)

10. F.D.O.C. Shoe policy even admits denying the medical care inspite of its policy for I/M to purchase shoes him/her self from the canteen, even

in the face of the fact the canteen doesn't sell the size shoe, plaintiff wears. See (Ex. Rec. App. 11-12 @ #'s 36,37, -44) (Supp. Rec. App. 12-13 @ # 29-30)

Thus it's F.D.O.C.'s Policy to deliberately across the board deny health care that it knows could cause an inmate to be placed at risk of substantial harm, unnecessary and wanton infliction of pain and injury, based soley upon 'non-medical reasons', that serves no justifiable penological interest. See: (Doc. 218 pp. 1-14 at #'s 1-32) Also See (Doc. 218-2/222-1 pp. 1-10 @ # 27) (218-4 pp. 1-9 @ #'s 1-22) (Supp. Ex. App. 1-40 @ #'s 1-96) In addition, this policy does not take into accountability for an inmate whose Medical Condition is unseen by the Clinician's eyes, (Doc. 218 pp. 3-10, @ # 1-9) cf (Supp Ex. A pp. 12-33 @ # 1-3, 85-96) This policy is even contrary to the acceptable norms of even Retail Sales, in that, Dept. stores allows the purchaser to return, an ill fitting, even undesirable piece of merchandise. (Supp. Ex A pp. 38 @ # 95 ): This is not conclusory, It's a Nationwide undisputed fact by all comercial consumers, who shop a retail outlets, such as K-mart, Walmart, Target, Burdines

11. Nothwithstanding F.D.O.C. Shoe policy, plaintiff asked Windsor:

"... Is it Dept. of Correction's Office of Health Services Policy to direct its, physicians, ARNP's, or Health Service Administrators to provide an inmate with the inappropriate size shoes, and force the inmate under policy to be personably responsible, to obtain the correct size himself via, canteen Order?

Windsor's Answer was: "No."

See (Ex. Rec. Plaintiff Second Interrogatory p. 5 @ # 5) cf. (Doc. 218 pp. 6-7 @ # 9) See Supp. Ex A pp. 1-40 @ # 1-96, (Ex. Rec. A pp. 1-34 @ # 1-102) (Doc 59, 178, 184,192-194) However this is exactly what Windsor done to plaintiff, Knowing it was wrong, evidenced by the fact, she Failed to return my 4-17-08, Rethaliory, denial of Med. Care grievance against HSA Windsor. id

13. The defendant, goes on to say that her actions, were justifiable, due to Policy Concerns, and Plaintiff did not address this matter with Clinicians per F.D.O.C. Policy. Plaintiff disputes / and provides controverted evidence instead below.

7

14. Defendant Windsor states, (Doc. 218) @ p. 7, #10) that she does not have the authority to override decisions of medical providers. This statement is disputed by the record evidence: (Ex Rec. A pp. 1-34 @ # 1-102) (Doc. 161, 163, 163-1) (Doc. 178, 184, 192, 194) (Supp. Ex. A. pp. 1-40 @ # 1-96).

15. Plaintiff disputes, defendants time line, (Doc. 218 p. 7-8 @ # 12-15), see (Supp. Ex A p. 2-4 @ #'s 4-10). I was not diagnosed by ARNP with provisional diagnosis of plantar fasciitis. But on November 25, 2003, by Neurologist Dr. Carlos Grama, M.D. and subsequently, based upon Gramas, Consultant Recommendation, Dr. Moluria M.D. sent/referred Plaintiff to Podiatrist Dr. Markeoff. (Supp Ex A p. 2-4, p. 3-4 @ # 5-10) of (Doc. 218 p. 7-8 @ # 12-15) Also see (Supp. Ex A pg. 5-6 @ # 12-15, pg. 8 @ # 13-14) where Soft Shoes, Special Shoes were prescribed, Also (See: Ex Rec. B-21).

16. Plaintiff disputes, defendant's Undisputed Material facts of (Doc. 218 p. 9-10 @ # 16-18 of (Supp. Ex A p. 4 @ #11; idp. 9-13 @ # 15-30)).

17. Plaintiff disputes Dr. Chung's allegations, that the only way to obtain a pair of requested orthopedic Shoes, was through the Brace Clinic but he also knew that obtaining ▓▓ a consultation with a specialist could not be expedited see (Doc. 218 p. 10 @ # 19) This statement is untrue, all consultation Forms, comes with a designate mode of refrnce to how the CHO wishes for the Consult to be, processed: either: "followup, Routine, Urgent, Emergency." See: (Ex Rec. C-7), the 1-16-08 Consult written by Dr. Chung, as "Routine" Clearly Dr. Chung's testimony now, has a vested interest in the undermining of (Doc. 178) determination, that a physician had diagnosed a condition that mandated treatment, thuse establishing a Serious Medical need, that Windsor violated. See (Supp. Ex A p. 14-16 @ # 33-34), if Chung wanted expedious spotbolts, all he had to do was check of: Urgent/Emerg. More over NWFRC, has transport buses arriving daily from RMC, the Shoes could have been sent by bus, or they or comparable Shoes, could have been purchased via PAY Card, as Dr. Richardson purchased Carl Johnsons see ▓▓ (Johnson's Depo. p. 2-3 # 6, 11-13)

18.  Plaintiff also disputes Dr. Ciungu's allegation that, he only requested the medical secretary to find out if the Brace clinic could send a pair of Spot Bilts directly to NWFRC that were similar to the pair he received in September 2006 directly to the institution." To be clear, on December 12, 2007 I instructed the medical secretary only to find out if a replacement pair could be sent from Brace clinic directly to the institution. I did not order verbal or otherwise, that Mr. Thompson should be prescribed a pair of Spot Bilt shoes.  **See** (Doc. 218-4 Ex D p. 6 at # 14-16)

19. Dr. Ciungu's statement _id_ is a Third party self serving statement, that is specifically intended to, annul this Courts determination in (Doc 178) of a physicians mandating treatment. However, on approx 12-21-07, subsequently to my viewing of my files, and reading the Notation by J. Jackson, and Windsor of Dr. Ciungu's direction to purchase me Spot Bilt shoes Ex Rec C-3. I on 12-21-07, personally thanked Dr. Ciungu (during a Medical Visit) for ordering me a pair of replacement shoes  **See** Supp. Ex A pp 14-16 @ # 33-34.  This was during the Christmas season. Doctor Ciungu, **never once**, during this encounter, tell me; he did not order any replacement shoes for me, nor did he say he did not know what I was talking about. Dr. Ciungu, acknowledge my gratitude with you're welcome, and he wished me a merry Christmas as I had wished him a Merry Christmas, and Dr. Ciungu, personally started to administer care to my wrist **see** supp Ex A pp. 14-16 @ # 33-34, **See** (Interog No. 1 pp 3-4 @ # 7, 8, 10) (Interog. # 2 pp. 2-14 @ #: 1-3, 5, 11-13, 16, 19, 20, 23, 24, 25-26) (Interog. No. 3 pp 1-2 @ # 1, 18).

20. Dr. Ciungu's statement in his Affidant, that he did not order verbal or otherwise that Mr. Thompson should be prescribed a pair of shoes Spot Bilt (Doc 218-4 Ex D p. 6 #14-16) is at most implausible, and I respectfully say, laced with: Chicanery.
cf: (Doc. 218-4 Ex. D. p45 @ # 10) Dr. Ciungu, was concerned, to prevent any increased risk of foot infection of erosion ... ordered shoes to to address present need .... then he now states in his 3rd party Vested interest statement **id** that now after finding out that the shoes he approved on 10/17/07, did not provide adequate shock

9

to plaintiffs Knees, that he didn't Know how to obtain the Spot Bilts fast enough via Consultation, so he asked his secretary to find out if the Spot Bilt Shoes could be sent directly to the institution, but, he did order not verbal or otherwise, that Mr. Thompson should be prescribed a pair of Spot Bilt Shoes, and that the medical records (Ex Rec. C-3) erronously indicate on 12-12-07 Ms Jackson called Rhett Bickman, who states its the HSA is to purchase these shoes, ...." See (Pla. Interog. #2 p. 7-8 @ #9-13)

21. Dr. Ciungu's statement 'id. is 'stupefying'... Dr. Ciungu, or rather the defendant will have this Court believe that, the Spot Bilt Shoes, that Dr. Ciungu, wanted to know if they could be delivered straight to NWFRC, were not intended to be for plaintiffs use... medical treatment to replace the 10/24/07 shoes. Dr. Ciungu's statement belies his intent to provide me with the Spot Bilt Shoes, that as he states were to be delivered to NWFRC. Ms. J. Jackson got it right when she made that Notation on 12-12-07, No where in the record does defendant provide evidence that Ms. J. Jackson, was ever incompetent in her functions as a Secretary for Dr. Ciungu. It was no error, especially because Defendant, not only overode Dr. Ciungu's prescribed Medical Care but she also deliberately failed to provide Dr. Peter Hienze Schaffer and ARNP Dowling both Clinicians, who in Accords with F.D.O.C. Policy prescribed plaintiff to recieve New Spot Bilt Shoes, on 10-28-08, 10-31-08, 11-6.7-16, 2008. infra discussed.

22. Also, on or around the same time the 1-16-08 Consult was written by Dr. Ciungu, after Windsor refused to obtain the 12-12-07 proscribed Care, My sister Leila Thompson, was also trying to assist me with inter alia obtaining the shoes. See (Supp. Ex A pp. 14 a #31-32). I saw Dr. Lord regarding my wrist, on approx 2-13-08, returned to my (NWFRC) camp, and was not allowed to sign consult until 3-4-08. See (Supp Ex A pp. 16-19 #s 34-44). Further more. It is not the CHO's responsibility to respond to Inmates Medically related Request/Grievances but instead the HSA's See (Def. Ex A p. 2-3 @ #s 6,7,8,9-12)                    10

23. After the denial letter was placed in my medical file, I only became aware of by viewing my file - never did J. Jackson, send me the letter of Denial from U/M. I obtained a Copy of it out of my Medical file, the same file that Windsor would review when I wrote her the request and grievances, informing her that U/M had denied the shoes based upon Institution could provide Shoes (Ex Rec. C-16) See (Def. Ex. A) (Supp. Ex A pp. 18, @ # 41-42). Prior to this on 2-20-08 I contacted NWFRC- Medical staff about shoes, advised Windsor of my intent to file Civil Rights 42 USC 1983 against her Agency for failing to provide Medical Care. See (Supp. Ex A p. 12-14 at # 28-32, and pp. 17 @ # 35-39); contacting Medical staff, both inside NWFRC- and outside NWFRC.

24. On 7-22-08 I saw Dr. Syed about my diabetes, at this clinic appointment, per 'NWFRC- matter of practice, policy or custom' I was not allowed to discuss any other issue see. (Supp. Ex. A pp. 20, @ # 50). But prior to this, on July 3, 2008 at RMC, I advised Dr. Isra of the shoes inter alia, and he told me Tallahassee said to give out no shoes See (Supp. Ex A p. 19 @ # 46, 47, 48, 49). Wherefore I continued my attempts via, contact with Medical staff @ NWFRC Annex, and via grievances to obtain the shoes. See (Supp. Ex A p. 20-21 @ # 51-55) Dr. Syed did not respond to grievances. Windsor did. see (Doc 178) and (Plaintiff Interrogatory # 1 pg. 1-2 @ #s 1.)

25. On 10-28-08, I explained to Dr. Peter Henze Schaffer @ NWFRC- Annex (where Windsor was the HSA) about the problem with my shoes, He is a clinician, and at his discretion, after our consultation, he ordered that I be issued a pair of "New Shoes" this took place at my Endocrine Clinic. cf: (Doc. 218-4 p. 3 @ #6) See (Supp. Ex A p. 21 @ #57) Cf. (Def. Ex. B, 000005) (Ex Rec. A pg. 14-16 @ # 51, 52, 55-56, pg. 17 @ # 60)). I disobeyed NWFRC- Policy, Custom to not discuss any other issue due to the increased pain in my knee, and all other efforts were failing.

26. Also, on 10-31-08 "ARNP Clinician Dowling" wrote a pass for me to recieve "Spot Bilt Shoes" - which cannot be purchased off the inmate canteen. But obtained

UIA, Health Service Administrator ordering them. But again Windsor did not obtain the proscribed care by Clinicians See ▆▆ (Supp. Ex A p. 21-22 @ #'s 55-59) (specifically #58) Also See (id p.24- #63-65).

27. ARNP Clinician Dowling, noted that there were no records of any reccomendation for soft shoes, in my "Active" File on 10-1-08, but said she would review my "inactive" files to see if my condition requires me to wear Spot Bilt Shoes. On 10-31-08 she determined I did and Issue Pass See (Supp Ex A p. 21 #58), based upon my conversation, regarding Osteo-Avascular in Knees. 28. Also, I dispute defendants ascertian that the first clinical Notation where I first directly requested a New pair of Shoes occurred in 9-25-08. The entire record is rife with not only my attempts and my sisters attempt to, have windsor - Medical Clinician, to obtain New Shoes from 11-30-07 to 8-24-09. See (Supp. Ex A pp. 1-40 @ #1-96) (Doc 59, 178, 184, 192, 161, 163 163-1)

29. The defendant states No ▆▆ replacement Shoes (soft shoes) were proscribed following the 10-1-08 consult with ARNP Dowling - defendant actually defines Dowling as a "Nurse" see (Doc. 218 p. 12 @ # 27). This is done to denote, ARNP's position as a Clinician, who according to Dr. Cungus Affidavit has the discretion to Initiate order of Shoes see (Doc. 218-4 p. 2 @ #4) Never the less, ARNP Dowling did prescribe Spot Bilt Shoes, on 10-31-08, and Issued pass for Shoes. Spot Bilts. ef (Doc. 218 p. 12-13 @ # 25-28) Also See (Doc 101, First Summary Judg. p. 19 sec C) here the defendant ▆▆ states, that the First medical provider to authorize a pair of replacement Shoes, was Dr. Richardson in 2009. This is also disputed by the authorization of Dr. Peter Hienze Schaffer @ Endocrine clinic on 10-28-08, and ARNP Dowling on 10-31-08, and Dr. Schaffer again advising Nurse Wynn to put the order thru for New Shoes, Spot Bilts on 11-7-08. See (Ex Rec. A pp. 13-16 @ # 49-55) Also, See (Supp Ex B-10: Dr. Schaffer's 10-28-08 New Shoe Order Plan of treatment) See Also; "Nurse Wynn, requesting that

12

Chart be given to C Pleas for Order of Spot Bilt Shoes
Size 12 E, (Supp. Ex B-11). C. Pleas is Charity Pleas, who is
Windsors Secretary. When plaintiff asked Windsor:

**Interog. No. 30:** What was the dates that Charity Pleas worked
as your Secretary at NWFRC. Annex?

**Defendants Answer :** "Objection- this request is not likely to lead to the
discovery of admissible evidence. The dates that
Ms. Charity Pleas had worked as Defendant's
Secretary is not in issue in this action and
will not assist with with whether Defendant
was in different to plaintiff's medical needs"

See (Plaintiffs Interrogatory No. 2 pg. 15 No. 30) (Ex Rec. A p. 14-15 @ #50-52)

30. Plaintiff states that, his statement in his Affidavit that Nurse Wynn
called to have some one order the shoes on 11-7-08, and that, she stated
"Charity" has to order the shoes", See (Ex Rec. A p. 14-15 @ #50-52 specifically
#52 @ Line/s #17-18) Please See (Doc 161 p. 15 @ #9) was relevant, cf. id. Interg.
Plaintiff, has presented other evidence, that clearly undisputably shows that,
Physician and Clinicians ARNP Dowling, proscribed that plaintiff recieve
New Shoes / Spot Bilt shoes to replace the innappropriate 10-24-07 issued
Shoes, in accords with FDOC Shoe policy. The relevant forms needed
Was the Chronological Record of Health Care. No physicians Order was
need nor used by Dr Gwugu in the ordering of the 10-24-07 shoes
on 10-17-07 See (Ex Rec B.36-40) ARNP Dowling wrote on the Chronologic
Record of Health Care that plaintiff be issued Health Pass for Spot Bilt Shoes,
Dr. Shaffer @ Chronic Illness Clinic Medical treatment plan was for plaintiff

to recieve New Shoes ▓ (Supp. Ex B-10) Nurse Wynn, sent chart with these orders to Windsors Secretary- who according to Dr. Giurgia (Doc. 218-4 p. 2 #3-4) hands file to the Medical Secretary of CHO for processing. but see: (Plaintiff interrogratory No. 2 @ # 16):

Interrog. No. 16: "What is the procedure to purchase a pair of Shoes from RMC- Warehouse?

▓ Defendants Answer: The proceedure for acquiring shoes from RMC warehouse is as follows: (i) doctor writes order (ii) the order is faxed by the HSA's or doctors secretary to RMC, and (iii) the warehouse completes the order by sending the shoes to the facility.

31. This, answer alone, clearly shows, that had Windsor, informed Dr. Giurgia of the need for an order, that, an expedious Fax could have had the 12-12-07 shoes sent immediately. This also shoews or a reasonable juror could infer that, 2 Clinnimians, subsequent to Giurgeis 12-12-07 prescribed care- also prescribed care - shoes for plaintiff, and it was Windsors responsibility as HSA to obtain the shoes, and that Windsor had Knowledge when on 11-16-08, ▓ Senior Nurse Wynn, sent Chart to Windsor's Secretary, with the Authorization from Dr. Schaffer to process New Shoe Spot Bilt Order. But Windsor still refused to do so. Thus exceeding F.D.O.C. Shoe Policy, and acting outside her authority and discretion, violating the Shoe Policy. See (Doc. 218-2 p. 4 @ #11 or 222-1 p. 4 @ 1):

holding: Any lower Administrative employee, such as a health Service Administrator (HSA) is not authorized to exercise his or her discretion to exceed the scope of this policy without the approval of a Supervisor

14

such as a physician, nurse practioner assistant warden.

Not only did Windsor, refuse to obtain the physician, ARNP nurse practitioners prescribed care that was approved by supervising Administrators. She deliberately wrote in a grievance that she denied my request for shoes during this same period. See (Supp Ex A p. 22 #59)

32. Windsor has stated in her Affidavit: (Ex A Doc. 218-1 p. 1 - 4) that: She does not overule decisions made by medical providers (id. p. 2 @ 5) If the inmates record contains an order from Doctor or ARNP authorizing the requested medical care, I forward the order to my secretary who submits a request by fax to RMC and RMC will fill the order (id p. 3 @ # 9) See generally entire: (Ex A Doc 218-1 p. 1 - 4)

33. On 11-19-08, Dr. Salvadore and Nurse Hall, came to my cell in confinement for Prostate exam. Briefly I mentioned to Dr. Salvadore about the shoes, he never examined my feet, But told me he would talk to Mr. Rummel Regional Medical Director, after Salvadore saw letter from Dr. Thayer Regional Medical Executive Director and Chairman of the Board of Physicians, Nurse Hall had previously told me that I would not get Neurontin or shoes, because I was writing grievances against Medical. In fact Hall told me that the 10-31-08 shoe pass written by Dowling was No good, because Windsor had to approve it. Never the less it was not a pleasant clinic. I knew I was being retaliated against when Dr. Salvater started to coerce me, with Nurse Halls assistance to refuse Neurontin. I did not. See (Supp Ex A p. 22 - 23 @ # 60 - 61)

34. On 11-25-08 ARNP Carrol reissued everything Dr. Salvadore took away

after I had filed grievances against Dr. Salvadore and Nurse Hall
for retaliatorly interferring with prescribed Medical Care. See (Supp Ex
A p. 23 @ # 62) In fact Windsor even denied grievances of: 11-19-08, (Supp. Ex B-12, 15-15eg)
and of 12-7-08 #0810-110-039, regarding Hall Salvadoer, despite the fact in her Affidavit
[ ] she states she only responded to, inmate request on 11-30-07, July 31, 2008
and informal grievance on 8-18-2008. See (Def. Affidavit. Doc. 20 218-1 p.3 @ 11) also:

She states each time she responds to Thompson request or grievances she researches
his medical record and consult with or alerted the medical provider (Id @ p.3 #12)
And Stating I have never been indiffrent to Thompsons medical needs Id. Also see (Ex Rec A
pg. 16 @ # 5 7)

35. However, when Windsor denied these above grievances, there was authorization
orders from Clinicians, Dr. Schaffer and Nurse Practicioner ARNP Dowling for New Spot
Bilt Shoes. Yet Windsor was indiffrent to these clinicians medical judgment, Just as
She was to Dr. Cungu's Medical Judgment regarding HSA to purchase me shoes to
replace the 10/24/07 shoes. See (Supp Ex A p. 36 @ #89, p. 37 @ #89-92, pg.
38 @ # 93-95, p. 39 @ #95) Windsor a non-medical trained personel, injected her judg-
ment, overruling, Trained Health Care personel Judgment. See (Def. Ex A)


36. On 12-7-08. I sent Request to Windsor, regarding Dr. Schaffer and ARNP
Dowlings authorization to Order New Shoes/Spot Bilt pass. This request was forwarded
by HSA Calhoun to the appropriate Medical provider. That is, HSA Calhoun
Alerted the Appropriate Medical provider ARNP/Nurse Practitioner Carrol; pursuant
to F.D.O.C. Policy. Where as when Windsor would receive a request or Grievance
from Me she would not alert the appropriate Medical provider. See (Ex Rec
Plaintiff Interrogatory #2 p 2 @ # 1, (i)(ii)(iii), p.4 @ # 3 (a)(b)(1)) Nor can
Windsor, say she needed an order written for the shoes, because, Dr. Cungu did not
write an order for the 10-24-07 shoes. See (id @ p. 3 #2) ARNP Dowling, and
Dr. Schaffer followed F.D.O.C. Procedure. Windsor acted outside her discretion
and refused, with Malicious, callous, indiffrence, with a reckless disregard for my
health and safety and her actions, caused me to suffer pain and injury
see (Supp Ex C-C1 thru C-41) See Also (Doc. 59, 161, 163, 163-1, 178, 184, 192
194) (Supp Ex A p. 24-25 @ #63-66)

37.   ARNP/Clinician Carrol, then reviewed my Medical history and Ordered me shoes, Noting my grievances that had been filed against Windsor and the Medical Dept @ NWFRC. ARNP Carrol requested Brace Clinic Consult because the Shoes 10/24/07 were worn out, (as I repeatedly advised Windsor), eventually ARNP Carrols, and Dr. Richardson's Brace Clinic Consult was denied, and again U/M stated its reason for denial, was that the Institution could purchase provide the shoes. ARNP Carrol then Ordered me a pair of Spot Bilt or Dr Comfort shoes, and Issued a pass/Health Slip PASS, stating that Inmate is to wear Orthopedic Shoes See (Supp. Ex A p. 24-25 @ #'s 63-66)

38. However, due to Windsor's negative entries in my Medical File, and all her denials of my request for shoes, Nurse Supervisor Foskey. Windsor's fellow lower level Health Care Supervisor, continued to carry out Windsor's objective to have me denied shoes, and to force me to obtain shoes from the canteen, even overriding Clinicians Orders to provide me with the shoes. See (Supp. Ex A p. 25 @ # 67)

39. Despite Dr. Richardson prescribing the replacement Shoes, on various date, including at (2) two Endocrine Clinics in Compliance with F.D.O.C. Shoe Policy, on 4-7-09 and again on 7-10-09 I did not recieve the shoes From nor with the assistance of NWFRC, but instead, by the Grace and power of God Almighty, in the name of Jesus Christ my Lord and savior, RMC. Medical Warehouse personel, with the assistance of Nurse Hackbarth, and on the advice of Ms. Sherly Beiling, Medical Records personel, I finally recieved the Size 12EE Dr. Comfort Shoes on 8-24-09. See (Supp. Ex A p. 25 @ # 67) Also See: (Written Deposition by Question, of Glenn Spivey, Page: 2-6 Question: # 5, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 23, 24, 25 ("28" specifically) Answers: Pg. 2-14) cf. (Ex Rec. A pp. 1-34 (specifically p. 27-31, @ #'s 89-93. Must See id @ p. 30 # 94) Myself and inmate spivey went to similiar ordeal @ NWFRC, never to recieve the shoes, until, RMC Medical Staff, bothered to, become fully informed, of the NWFRC Clinicians Orders for us to obtain Spot Bilt or Dr. Comfort Shoes. See (Plaintiffs Interrogator # 1 p. 8. Where Plaintiff asks Windsor:. Interrog. # 24:   " What other inmates who filed grievances against you for not replacement his shoes, did you deny replacement of Orthopedic Shoes as well? (Give names, Prison I.D. number, and current facility/Institution Address.

Windsor's Answer: There are no other inmates who filed grievances against me personally for denying a therapeutic shoe request. To my Knowledge, Plaintiff is the first inmate to file grievances personally against me regarding the denial of Therapeutic Shoes.

Windsors. Answer to this interrogatory is disputed, not only by I/M Spivey, but I/M Carl Johnson; (Depo. By Written Question p. 2-4 #3,5,9,14) and Julius Haylard's: (Declaration pp. 1-5) As plaintiff has stated it was (and probably still is) NWFRC's Policy, or pattern of practice or custom to deny care, maliciously to inmates that file grievances against Windsor or her Dept.

40. Windsor, has argued that her actions, or inaction, of not providing me with prescribed medical care, was based on Policy of F.D.O.C., and is only mere negligence. However, the Record provided to this Court, in addition to the Supplemental Exhibits, clearly shows, that Windsor, for arguendo, committed, repeated acts ███████ which, amounted to being deliberate indifferent to my serious Medical needs, and not only my serious Medical needs, but those of: Carl Johnson, Glenn Spivey, and Julius Haylard. **And** only God, Windsor, and other inmates knows, whom else and how many Windsor has done this to, in concerted efforts of lower level Medical staff members at NWFRC - Formerly known as Washington Correctional Institution located in Chipley Florida. See (Ex Rec. A p. 1-34) generally, ~~and~~ Johnson, Spivey, Halyard Depos by Written Question, and Declaration.

41. The defendant has brought forth a defense that I was contributory to the negligence of "poorly" controling my diabeties thus it was my fault for needing shoes, and that had I taken care of myself and **not** refused Insulin and tegretol, I would not have needed shoes in the first place. See (Doc. 218 pp. 9-12 @ #'s 16, 21-23, 29-30) (The Defendant also mentions plantar facitis (id @ #'s 13-15) Note: Nurse Bare foots issues or rather, referring my chart for review of passes to ARNP Carrol, i.e. low bunk, no-lifting. No work, was not in relation to Plantar Facitis, but ongoing preventive prescribed care that I had received since inception into F.D.O.C. See (Ex Rec B-10, 13-14, 25) ████ Bare Foot did not have authority to write pass, She is not a Clinician) cf. (Def Ex B @ p. 5 #14)

42. The defendant focuses this Court on the Refusals I signed, but failed to advice the Court the Medically related circumstances of **why** these refusals were signed, nor did the defendant advise this Court of F.D.O.C. Policy, that an Inmate who is recieving to much Insulin which causes Hypoglucemia - Low Blood Sugar - or Not enough Insulin which

causes Hyper-glucamia, can only, not recieve or request to recieve more insulin, he/she must First Sign a refusal. There were other justifiable instances in me signing refusals especially being given medication unknowingly or without my consent to take said Tegretol. See (Supp. Ex A pp. 25-32 @ #'s 68-89) For a complete accurate, understanding of of plaintiffs refusal, which taken in light of these facts this Court will see that any — reasonable person would have done the same as plaintiff given the unusual circumstances, These undisputed facts are disputed. see (Supp. Ex. A).

43. The Defendant lastly (Doc. 218-p.13-14 @ # 32) states, that: Following the time Period when Plaintiff wore the 10/2007 shoes, he exhibited no injuries within his lower extremities, and on 7-10-09 Dr. Richardson noted that thompson's extremities, were within normal limits, (See Def. Ex B. p.10 #26, Ex R p.7) that Dr. Franco reviewed x-rays performed on Thompsons Knees finding No fracture or dislocation, and only changes associated with Arthritis (Def Ex B, p.10 #26, Def. Ex Y p.3) On 2-4-10 Dr. Gama did neurological examination of Thompson, noting that his gait was OK (Def. Ex Y, p.7) meaning that Thompson did not have difficulty with Ambulation.

44. Plaintiff hereby disputes the defendants allegation, of No detrimental effect due to the wearing of the 10/2007 shoes. First, The defendants have personally and deliberately mislead this Court on the Neurological Examinations by Dr. Gama. During the times, mentioned by Defendants, of my Neurological Examinations, (i.e.: June 21, 2007, and 2-4-10). See (Def. Ex. B p.6-7 @ # 16 and 27). These Neurological Examinations by Dr. Carlos Gama, M.D. Neurologist, were performed on my Left, Right Wrist, Arms, Biceps, "My upper extremites" not on my Feet, legs, Knees, Lower extremities. See (Supp. Ex A p. 2   @ # 4) this consult was for lower extremites but defendant does not bring this to the Courts attention. Dr. Gama, and Dr. Molina, one Dr. Minkoff, F.D.O.C Clinicians, and specialist in Neurology, and podiatry, Dr. Orelander Prosthetics, made diagnosis of Neurapathy inter alia. Not a ARNP. see (id @ p.3-6  # 5,6,7,-12, 15, p.8 @ # 13-14). See Also (Supp. Ex A1 thru A30) setting forth Medical Records, detailing From start to finish, Wrist upper extremites Neurological Consultation, disputing defendants allegations that No Neurapathy was diagnosed in plaintiffs Feet, and that the exames were for my Feet, and Ambulation. specifically see (Supp. Ex A-29) this 1-21-10 Neuro-Report's Impression Data, was amended by Dr. Gama, due to clerical error, in designating plaintiff's Right wrist with mild Carpal tunnel, and Left wrist with severe carpal tunnel, compare; (Supp Ex A30, hand written Neuro Report; Recommendations: 2-4-10 Imp. 1) RIGHT CTS... Severe, 2) Mild (L) CTS) However defendant submitted (Ex Y. 00007, Doc. 218-26) darkened and (id Y. 00011) initial Report, unamended version. Nevertheless neither is for lower extremites. Furthermore at this 2-4-10 exam by Dr. Gama, I was not even walking... I was in a wheel chair !! cf (Doc. 218-pp. 13-14 @ # 32)

19

45. Next, the defendants, states that, in support that I suffered No detrimental effect, from the wearing of the 10/2007 shoes, that Dr. Richardson noted that my extremities were within normal limits on 7-10-09. However, as undisputed by the defendant, Dr. Richardson, as he had on 12-15-08, 1-15-09, 4-7-09, and again on 7-10-09, prescribed Replacement of the 10/24/07 shoes with Spot Bilt shoes Due to me repeatedly telling him that they were causing <u>pain</u> in my Knees, and they were visibly... extremely deteriorated, and after I had explained every thing I had went through with Windsor trying to obtain replacement shoes. See: (Supp Ex App. 11-14. @ #'s 23-31) See (Id specifically diagram No. 1 @ # 30. also id @ p. 24-25 @ # 64-67) See Also (Supp. Ex p. 33-36, @ #'s. 85 - 87, 89) Dr. Richardson also prescribed the spot Bilts because I did meet DOC Shoe policy Criteria. A Jury could infer that, I meet this criteria from 11-30-07 to 4-7-09 to present but Windsor, interference, and failure to provide care was deliberate indifferent.

46. Next and lastly the defendant's claims, in support of that I suffered No detrimental effect from wearing the 10/2007 shoes, is the fact that, Dr. Franco reviewed x-rays performed on Thompson's Knees, finding no Fractures or dislocations, only changes associated with arthritis. (Doc. 218 p. 14 #32)

47. This ... allegation is disputed by the undisputable fact in (Supp. Ex C-38) the June 28, 2010 Surgical Report, showing, explaining Post OP Diagnosis, among other things, torn Meniscus, Scoring of bond on bones, grooves in femur... The x-ray did <u>not</u> pick this up. Plaintiff is awaiting the 9-20-10 Surgical Report on Left Knee, requested by plaintiff on approx 10-12-10 for Exhibit purposes in opposition to 2nd summary Judgment bout has not been turned over to plaintiff at this time; by F.D.O.C Records dept. Informal griev. Filed. No Reply, as of 10-28-10.

48. Never the less, at a follow up on approx 10-4-10, Dr. Klinehans <u>interalia</u> told plaintiff that the left Knee meniscus was torn as well, and there was a loose piece of cartledge (loose body) that had to be removed. The x-ray review by Dr. Franko didn't pick this up either or Dr. Franko failed to report it. See (Supp Ex A. Pages 36-37 @ #'s 88-89) A reasonable juror could infer, that the bilateral tear in L-R Meniscus, and the grooves, and significant scoring on the femur bone, could be contributed to, the 10/24/07 shoes not providing adequate Shock as I had advised Windsor of, and Clinicians, who ordered that the 10/24/07 shoes be replaced but Windsor, refused to do so. Cushioned shoes, are necessary medically to protect my Knees.

49. In regards to defendant's alleged undisputed statement of Material Facts, as to plaintiff not producing evidence of a detrimental effect on record plaintiff hereby directs this Court's attention to specific, factual proof of detrimental effects, of from the time, of initially recieving the 10/24/07 Shoes, up to the present 2010. These undoservable effects, such as, pain, encreasing over a period of time, to interfering with even walking to take my insulin, ▆ to being prescribed pain medications, Non Narcotic, to Narcotic by Clinicians, approved by Exicutive Medical Director, to being issued a Walker, to Wheelchair, to having for the first time "ever" both knees requiring surgery at the same time, to my pleas for help, to NWFRC Medical Staff (including Windsor) denying pain meds (issued for pain injury suffered from the effects of the 10/24/07 Shoes) that were prescribed by RMC. Clinicians, and Medical Directors, and placing me back on Medication that did not work... inter alia, plaintiff hereby directs this Court to evidence the defendant failed to put furth, that upholds, and substaintiates this Courts finding in (Doc. 178 p. 15) of the detrimental effects plaintiff provided evidence to support said detrimental effects of the delay in recieving replacement shoes - Verifying Medical evidence See (Supp. Ex A pg. 33 - 36. @ # 85-95). Also See (Ex Rec. C-15(a)(b), pg. 2 Line 28-29) where I first felt the loose body short sticking and stabbing me... cf. (Ex Rec A Pg. 1-34 @ #s 1-102) (Doc. 59, 161, 163, 163-1) (Ex Rec. A3.-disputing Windsors claim, as to this affidavit being self serving sworn statement see (Doc. 218 p. 14 @ I)

50. Lastly, the defendant has asserted that from the date of 3-4-08 to 9-25-08 I did not seek out, the replacement shoes via, Clinician consult, or go to sick call. This is also disputed, where, in accords with F.D.O.C. Policy, an Inmate is to file Medical related grievance via. Chap. 33. Also, plaintiff went above and beyond the Policy of F.D.O.C. Plaintiff's Sister Spoke with Windsor, and various F.D.O.C. Medical officials, and was always told I would get the shoes, or they have been ordered. Even Dr. Frank Johanson's office was contacted, plaintiff had to await, the grievance process to be exhausted, and also the awaiting of the 1-16-08 to 3-26-08 denial of Consult, the transfers etc. But at all times plaintiff was attempting or actually addressing this issue with medical

21

providers, when appropriate. **See** (Supp. Ex App. 10-21 @ #s **20-56**) (see id @ #31 Leila's involvement)

51. Plaintiff also states it is a **fact*** that, other HSA's when presented with the same type of request/grievances as Windsor was presented with by plaintiff requesting authorized replacement shoes. "They **all**" **Alerted and/or Consulted with Clinicians**, either, resolving the problems, as "**HSA: Hartsfield**" done. **See** (Supp Ex A p.3 @ #**7**) (Ex Rec. B-30(a)) **compare**: HSA job description (Def. Ex ■ E p.000002; **Line 6**; ensures that inmates request informal grievances and formal grievances are answered for the health services dept. in accordance with Dept. rules and procedures; **Line 9**: facilitates problem resolution with local hospitals and health care providers; **Line 11**, Develope In-house procedures and performs resolutions necessary to the effective operation of health service dept; **Line 12**; coordinates communications and flow of information within the health service dept, via required and ad hoc staff meetings and circulation of Dept rules and procedures) cf. (Rec Ex Appendix **1**); cf.: Windsor's Affidavit (Ex A Doc 218-1 p.1-4) cf (Interrog. #1 p.2 @ #'s 1 i, ii, iii,; p.4 @ #3 (a),(b); p.6 @ #'s 6,7,8; p.7 @ #'s 9,10,11,; p.10 @ # 15-16; p.11 @ #20; p.12 @ # 24; p.13 @ # 25, 26, 27; p.14 @ # 24; p.15 @ # 30) **See** (Interog. #3 p.1-3, e# **1 and 18**)

Secondly; "**HSA: Street**," confronted with plaintiff request for replacement shoes, immediately **alerted and consulted with Dr. Cuwagu. See** (Supp. Ex A p. **9-10** @ # **15-20**) **compare** Windsor's response **See** (Supp. Ex A p. 10-13 @ # **21-29**) in relation to resolving the problem... as another reasonable person in her position HSA Hartsfield **supra** @ 51.

Thirdly, "**HSA: Calhoun**" confronted with plaintiffs request for replacement pair of shoes immediately, **alerted or consulted with ARNP Carrol See**; (Supp. Ex A p. 24 @ # 61-64; p. 25 @ # 66-67) (**See Also** (Doc 59, 161, 163, 163-1, 178) **See** (Interog. No 1 p.3 @ # 7-8, p.5 @ #13)

"**All 3 HSA's**" reasonable persons in the same job position as **Windsor**, took a lawful deliberate coarse of action, to Alert or Consult with Medical providers, in accords with the discretion of both F.D.O.C. and their Job Responsibilities and duties. They did **not** show deliberate indifference to plaintiff request nor respond in a deliberate indiffirent way. It may be that, they were better trained, for the position, or that their age maturity had an overwhelming factor, Most in their upper late 30's and early 50's years of age. Where as it was reported that HSA Windsor was in her mid twenties or very early thirties, ████████████

52. Nevertheless, Defendant Windsor, was warned various times by plaintiff that her actions, and the actions of her co-workers, were wrong, and he was going to

*: undisputed by both plaintiff and the defendant

persue filing a 42 U.S.C. Civil Rights Complaint, if Care/Shoes were not issued. Defendant Chouse to take no heed, and continued her deliberate indiffent actions towards plaintiff, with a ▇▇▇ callous, reckless disregard to plaintiffs safety and health, despite plaintiff repeatedly advising Windsor of the pain and substantial Risk of harm, he was suffering in his ▇▇▇ knees, and fear of reinjury due to the continual ▇ wearing of the 10/24/07 Shoes. Nevertheless Windsor, responded to plaintiff pleas for help with various "obdurate responses" See: (Ex Rec. C-2, C-1, C-4, C-2(a) C-6(a) C-6(j) C-8, C-9, C-19, C-19(b) C-19(c) C-22, C-25, C-25(a)(b) C-28(a)-(f), C-31(a)-(c) C-33(a) (d)) that were not entirely based on F.D.O.C. Policy.

53. The defendants has purposely ... stayed away from arguing facts about the Osteochondritis Dessicans, Avascular Necrosis, that I suffer from that, requires the wearing of the appropriate size and Shock absorbent Shoes. See (Supp. Ex A pp. 1-4 @ #'s 1-11, p. 33-40 @ # 85-96)

54. Plaintiff takes this ommission as evidence that the defendant has conceded to this Medical condition requiring the medical condition, show defendants, even Dr. Frank Johansons office of Health Services F.D.O.C, a continual deliberate indiffrence to plaintiffs health condition. In fact on 10-6-00, ARNP Clinician. advised plaintiff that special Shoes are only to be given out for, Significant foot deformities, I advised that, my concern was for my knee protection of which I just had 2 surgical procedures on each leg/knee** See (Supp. Ex A, pp 34-36 @ #85-86) The Dr. Comfort Shoes issued on 8-24-09, heels have began to wear down in an angel, and the once rubber sole that covered the air shock companment on the heels, have worn away. leaving the air shock pockets, in operatable. She did order Size 12.5 EE width high top shoes, on 10-6-10 -10-6-11, but I have Yet not recieved them despite me writing Medical warehouse approx on 10-9-10. However Dr. Johanson says, Soft Shoes/orthopedic Shoes are to be issued pursuant to F.D.O.C. policy, for post surgical recuperation. (Def. Ex B 1-10.) Also See: Defendants Second Amendment To The Response To Plaintiff Request for Admissions, (Ex Rec. DD) or (See Supp. Ex: DD) The defendants have admitted to the genuiness of Plaintiff's Medical Condition: Osteochondritis. (Id @ 1 A, B, C, D, E, F, G, H, L, S, V)

---

**: The bulk of my R-Knee Meniscus was removed See (Supp. Ex C-38, Ex Rec. Appendix: 3 @ p.1, 4-D)

55.   As plaintiff has state __supra__ F.D.O.C shoe policy cited by Dr. Frank Johanson, is, applied at Institutions, discriminatorily, haphazard, and at the whim of the Clinician. Since plaintiff arrived back at RMC on 6-24-10, he has come into contact with various inmates, who were either proscribed a pair of Dr. Comfort shoes for various reasons. The permanants Inmate at RMC, who work for certain Health Care officials, are (some not all) given Dr. Comforts, and they have __no__ foot deformity or recovering from post surgical recuporation, but recieved the shoes as part of the "__perks__" for working @ RMC hospital. This means that, a Clinician had to issue an pass and Order. For the shoes, I have personally spoke with permanant inmates, that says they got the "hook-up" from their boss @ RMC. This also applies to, certian Admin. Permanants @ NWFRC, who worked for the Medical Dept, or for Staff Dinning. preparing staff food, where as other inmates who worked for the same Foodservice Dept. were issued Brogan boots.

56.   One inmate in particular: Richard Wright DC# __168853__, who resides at RMC-M/U as a permanant Medical Care Inmate, due to being on Dialysis for his Kidney, and who is a diabetic, and whose feet, visibly has errosions, blisters on them, and of significant observation, is the significant Deformity, visible to anyone who cares to view it, is his Right foot, is missing a toe, the one next to his big toe, and which causes, the big toe to rise up over the missing space, onto the third toe. Mr. Wright, has extreme poor ballance and ambulation, I have personally viewed him walking with extreme difficulty, some times having to be placed in a wheel Chair and pushed back to the dormitory. He has told me of the pain he has and is experiencing, I have personally filled out, both Sickcall Regvest (2) times, and I have seen his Medical pass issued for Soft Shoes, but he has never recieved them despite contacting Medical Providers, and writing grievances, and request to HSA.

57.   Wherefore, F.D.O.C. Shoe according to Dr. Perez M.D. Clinician, or her whimsical discretion, She informed Mr. Wright, that he does not get soft Shoes, because, one: he is not a permanant inmate that works here at RMC. This is totally contrary to Dr. Frank Johanson's Asst. Secretary (Clinical) FDOC. Office of Health Services Special Shoe Policy __See__: (Richard Wrights Declaration) __infra__ cf: (Doc. 218-2/222-1) (Doc. 218) (Doc. 218-4) __See__ __supra__ (pp. 4-7 @ # 2-13) __also__ __See__: (Supp Ex App. 18-19 @ # 44, 46) (__Id__ pp. 38-39 @ # 95).

24

Conclusion

Wherefore based on the foregoing. Plaintiff Thompson respectfully request the Court to deny Defendants Second Summary Judgment (Doc 218)  It is so Prayed, and respectfully request this Honorable Court to enter a Rule 54 Order, making Final Judgment on this protracted Summary Judgment Phase of the Proceeding, and any other just and proper relief this Court deems necessary.

Respectfully submitted,
/s/: _____
Melvin Bernard Thompson
Plaintiff - Pro Se
# 959252
RMC - P.O. Box 628
Lake Butler, Florida 32054

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy^ of the foregoing has been furnished by U.S. Mail to Mr. Marcus O. Graper, The Capitol PL-01, Talla. F/A 32054, via placing in prison officials hands on this 28 day of October 2010. On this 1 day of November 2010

/s/ _____

mailed Certified Return Receipt # 7000 1670 0011 5106 6517

Δ: see footnote 7, in Motion To Strike pg. 14. unable to serve copy on A.G. Also see Notice To Court, filed Nov. 1 2010