IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA PANAMA
CITY DIVISION

Melvin Bernard Thompson
       Plaintiff Pro Se

v.

RECEPTION MEDICAL CENTER
DATE: 11-1-10
INMATE INITIALS: _____
CASE No. 5:09 cv 73 RS EMT

Monica McCall Windsor
       Defendant

Plaintiff's Memorandum of Law in
Support of Plaintiff's Response in
Opposition To: Defendant's Second
Motion For Summary Judgment (Doc. 218)

    Plaintiff submits this Memorandum of Law, in support of his Response in Opposition to Defendants Second Motion For Summary Judgment (Doc. 218) Because Windsor has failed to meet her burden of demonstrating that there is no dispute as to any material fact, and because she has failed to demonstrate that she is entitled to Summary Judgment as a matter of Law, because the facts set forth in: Plaintiff's statement of Material facts and the attached evidence, in connection with the clearly established Laws infra show that defendant violated plaintiff's Constitutional Civil Rights which were clearly established at the time of Windsor's violation this Court should deny defendants Motion For Summary Judgment (Doc. 218).

        Preliminary Statement.

    This Court has granted plaintiff permission to Cross Refer to exhibits already on record, hence forth, when plaintiff Cross Refrence to exhibits on record he will refer to them as: (Ex Rec or Rec. Ex) and all Supplemental Exhibits will be referred to as: (Supp Ex). Also, plaintiff will utilize Doc and its #, in references. in regards to referring to Documents From Initial Summ. Judg. Proceedings.

1

1.  Standard for Summary Judgment:

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial" Glenn v Copeland F.Supp.2d, 2006 WL 1662921 N.D.Fla (June 19, 2006) citing: Matsushita Elec. Ind U.S. Co.v Zenith Radio Corp. 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986)(quoting Advisory Committe Note to 1963 Amendment of Fed. R. Civ. P. 56(e)) In order to prevail on Motion for Summary Judgment, the moving party must show that the non-moving party has no evidence to support his case or present affirmative evidence that non moving party will be ~~████~~ unable to prove his case at trial. Celotex Corp v Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553-54, 91 L.Ed. 2d 265 (1986) If the defendant successfully negates an essential element of the plaintiffs case the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial Id. The mere exsistance of some alleged factual dispute between the parties will not defeat an other. wise properly supported motion for summary Judgment; the requirement is there be no genuine issue of material fact." An issue of fact is "material" if it is a legal element of the claim as identified by substantiantive law governing the case, such that its presence or absence might affect the outcome of the suit." Glenn supra citing Anderson v Liberty Lobby, Inc. 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed 2d 202 (1986), see Also: Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir 1992) citing Anderson. " It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party, Tipton, 965 F.2d @ 998 (citing Matsushita 475 U.S. @ 587, 106 S.Ct. @ 1356)

Non-moving party must show more than the existance of a "metaphysical doubt" regarding the material facts, Matsushita, and a "scintilla" of evidence or conclusory allegations is insufficient Celotex Corp. 477 U.S. @ 324 (quoting Fed. R. Civ. P. 56(e)). Plaintiff - Non moving party must either point to

the ████ Evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. Celotex Corp, supra; Owen v Wilkie 117 F.3d 1235, 1236 (11ᵗʰ Cir 1997)("Rule 56(e)... requiring the nonmoving party to go beyond the pleadings and her own affidavits, or by the depositions answers to interrogatories, and admissions, on file,' designate' specific facts showing that there is a genuine issue for trial") (quoting Celotex Corp. 477 US @ 324 (quoting Fed. R. Civ. P. 56(c), (e))); Hammer v. Slater, 20 F.3d 1137 (11ᵗʰ Cir 1994)

The basic issue before the Honorable Court on motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law" ██ Glenn supra, citing Anderson 477 U.S. @ 251, 106 S.Ct.@ 251Q. The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met his burden, the Court must view the movant's evidence and all factual inferences arising from it in light most favorable to the non-moving party. Adickes v S.H. Kress and Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11ᵗʰ Cir 1993), Welch v. Celotex Corp. 951 F.2d 1235, 1237, (11ᵗʰ Cir. 1992) Thus "[I]f reasonable minds could differ on the inferences arising from undisputed facts, then ██ a court should deny summary judgment" Miranda v. B and B Cash Grocery Store Inc; 975 F.2d 1518, 1534 (11ᵗʰ Cir 1992) (citing Mercantile Bank and Trust v Fidelity and Deposit Co., 750 F.2d 838, 841 (11ᵗʰ Cir. 1985)). Jones v Cannon, 174 F.3d 1271, 1282 (11ᵗʰ Cir 1999) The non-moving party may avail itself of all facts and justifiable inferences in the record taken as a whole" Tipton, 965 F.2d @ 998 (citing United States v Diebold, Inc 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962)). The evidence of the non-moving party is

to be believed, and all justifiable inferences are to be drawn in his favor". Anderson, 477 U.S. @ 255, 106 Sct. @ 1609). ~~████~~ Nonetheless Non Moving party still bears the burden of coming forward with sufficient evidence of every element that he must prove. Celotex Corp. 477 U.S. @ 317. Moreover the Court must not resolve Factual disputes by weighing conflicting evidence". Tippen v. Celotex Corp., 805 F.2d 949 953 (11th Cir 1986). Also, Ordinarily summary Judgment should not be granted in cases where motive, intent, and subjective feelings and reactions are to be searched ..." Rogers v Evans 792 F.2d 1052, 1059 (11th Cir 1986) See Dugger v Washington 860 F.2d @ 1020-21 (11th Cir. 1989), Halle v Tallapoosa County 50 F.3d 1579,1583 (11th Cir 1995)

Finally. Allen v. Schribner 812 F.2d 426 (9th Cir 1987) citing: Anderson @ 255 held: @ Summary Judgment stage the judges Function is not him/herself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial ..."

Plaintiff reasserts that, the defendant has failed to meet its burden, that there is no genuine "issues of "material" Facts indispute. Based upon the foregoing State ment of Material Facts in dispute, admissions, interrogatories, affidavits, Depositions Declarations, Verifying Medical Records, and Supplement and Exhibits on Record Submitted by plaintiff establishing the undeniable proof of genuine issues of Material Facts indispute. This Court should deny Summary Judgment.

## 2. Elements of Section 1983 Action:

The initial inquiry in any §1983 Action focuses on whether the two essential elements to a action are present: 1) whether the person engaged in the conduct complained of was acting under color of state law; and 2) whether the alleged conduct deprived a person of rights, privileges or immun-

4

ities guaranteed under the Constitution or laws of the United States:

In the instant case, the defendant has, admitted that she is a state employee of the Fla. Dept. of Corrections, office of Health Services,(at the time of the alleged Constitutional deprivation); and served in the official Capacity of: Health Service Administrator of NWFRC Main Unit and Annex. See (Def's Ex. A) Therefore Windsor, when she violated plaintiff's Constitutional Civil Rights ▬▬▬▬ by being deliberately indifferent, via, denial, delay and interferring with authorized/prescribed Medical Care, prescribed by: Physicians, and ARNP's (Clinicians) was acting under the Color of State law, when she exercised her Supervisory position's power possessed by virtue of state law and made possible only because she is clothe with the authority - Health Service Administrator - of State law.

Windsor personally participated - in her Supervisory Position - in the deprivations of Thompson's Constitutional Civil Rights, Windsor had actual Knowledge of the Challenged Conduct a aquiesced sufficiently to establish personal participation. Windsor set in Motion a series of acts by her coworkers and lower level administrators that caused her to inflict this Constitutional Injury, and Windsor established, a pattern of practice or custom permitting co-workers, to deprive plaintiff, (and Inmate: Johnson, Spivey, and Haylard) his/their Constitutional Civil Rights.

Windsor had a custodial, Ministerial, duty and responsibility - in accordance with F.D.O.C. Policy and Procedure Health Service Administrator's Job Description and duties to provide authorized prescribed Medical Care. See: Carswell v Bay County (11ᵗʰ Cir. 1988), Lugar v Edmonson Oil Co. 457 U.S. 922, 102 S.ct 2744, 73 L. Ed. 2d. 482 (1982) and Morrison v. Washington County Ala. (11ᵗʰ Cir. 1983)

Wherefore, neither elements are missing from the 1983 claim in addition

the plaintiff has submitted Evidence, on record, and supplemental evidence, to show an Affirmative connection between, Windsors conduct and the depravation of the Constitutional or Statutory Rights. See (Doc 59, 178, 184, 192, 199) Further below plaintiff will "_again_" prove Windsor's Deliberate Indiffrence, towards his Serious Medical need, in accords with the clearly established Laws.

Windsor cannot escape liability under this defense and this Court should deny Summary Judgment.

3.  Eighth Amendment Claims - Deliberate Indifference to Proscribed/Authorized Medical Care, via, Interfrerence, delay, denial, for Non-Medical Reasons, by a Non-Medical Personel:

This instant case is '_not_' about," a medical provider Failing to prescribe medical care, or the appropriate medical care, nor is this instant case about a disagreement' between plaintiff and the medical Doctor, adequacey of the care provided." This instant litigation is' about," a prison non-medical Official's interfrerence with, and failure to carry out treatment that a doctor or other medical official prescribed (several times) for plaintiff." This Case is about, an official of prison authority intentionally denying and delaying plaintiff access to prescribed medical care/treatment once ... several times... it was authorized/prescribed, for plaintiff by prison Physicans, and Physicians Asst. Clinicians.

This Case _is_ about about an official knew that plaintiff had a serious medical need of the prescribed medical care, but fails _and_ deliberately refuses to obtain the medical care For plaintiff. Moreover, this Case _is_ about a non-medical personel, who deliberately fails to inform (alert or consult) competent Medical (providers) Authorities of plaintiffs medical need, when the non-medical

6

prison official is not competent to evaluate... risk posed by inmate.

Therefore, the prison official: Defendant Monica McCall Windsor, a non-medical personel, was well aware of the fact that these acts were clearly established at the time of the deprivation of plaintiff's Constitutional Civil Rights, between November 30th 2007 thru August 24th 2009 See: Estelle v Gamble 429 U.S. 97, 106, id @ 104-05, 97 S.Ct. 285, 50 L.Ed 2d. 251(1976)), Estelle @ id 104-05, Lancaster v. Monroe County 116 F.3d @ 1425 (11th Cir 1997), Waldrop v Evans 871 F 2d 1030, 1036 (11th Cir 1989).

Futhermore, It is well settled that the goverment has a constitutional duty to provide minimally adequate medical care to prisoners. Harris v Thigpen 941 F 2d 1495, 1504 (11th Cir 1991).

Moreover it is well settled that if necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indiffrence has been made out See Ancata v Prison Health Services 769 F2d 700 @ 704, 11th Cir 1985) (citing: Archer v Dutcher, 733 F.3d 14, 17 2nd Cir 1984). Also, It is well established that, prison official's delay or deny access to medical care or intentionally interfere with treatment once prescribed the eighth Amendment is Violated Estelle supra, also holding: the eighth amendment pro-scription does not permit personell to subject an inmate to "acts or ommissions sufficiently harmful to evidence deliberate indiffrence to serious medical needs," further holding: However, "[a]n ▮▮▮▮ inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Estelle @ 429US@103, 97 S.Ct.@290. Thus the state has a constitutional obligation to provide adequate medical care to those whom it has incarcerated Id See also: West v Atkins. 487 U.S. @ --- 108 S.Ct.@ 2258. Accordingly deliberate indiffrence to a prisoners serious illness or injury states cause of action under § 1983 Estelle @ 105, 97 S.Ct. @ 291.

Medical treatment violates the Eighth Amend. "only when it is so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" ▬ _Harris v. Thigpen_ @ 1505, (citing _Rogers verses Evans_ 792 F.2d. 1052-1058 (11th Cir 1986)).

Stating an Eight Amendment claim of denial of Medical care requires satisfying both on objective and subjective component _Taylor v Adams_ 221 F.3d 1254, 1257 (11th Cir. 2000). First there must be conduct by prison officials when objectively speaking is "sufficiently serious" to constitute deprivation "denying the minimal civilized measures of life's necessities" Id. (quoting _Wilson v. Seiter_ 501 U.S. 294, 298, 111 Sct. 2321, 115 L.Ed. 2d 271 (1991)(internal quotations omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. _id_ (citation omitted)

Both the objective and subjective components encompass to subsidiary requirements _Taylor_ 221 F.3d @ 1258. As to the objective prong an objectively serious deprivation requires showing an objectively "serious medical need". _Estelle_ 429 U.S. @ 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. _Hill v DeKalb Regional Youth Detention Center_, 40 F.3d 1176, 1186 (11th Cir. 1994) abrogated on other grounds by _Hope v Pelzer_, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed. 2d. 666 (2002): See _Farmer v Brennan_ 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1994)(serious medical need is one that if left unattended "pos[es] a substantial risk of serious harm"). In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain" _Estelle_ 429 U.S. @ 105-06 (internal citation omitted) See _Taylor_ 221 F.3d. @ 1257; see also _Adam v Poag_, 61 F.3d 1537 1543-44 (11th Cir 1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of deliberate indifference" Estelle 429 US @ 105. " Deliberate indifference has three components: (1) subjective knowledge of a risk of harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v West 320 F.3d 1235 - 1245-46 (11th Cir 2003)( citing McElligott v Foley, 182 F.3d 1248, 1255 (11th Cir 1999), and Taylor, 221 F.3d @ 1258( stating that defendant must have subjective awareness of an "objectively serious need" and that his response must be an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference Harris v. Coweta County 21 F.3d 388, 393 (11th Cir 1994) ▬▬▬

A delay in providing medical treatment can constitute deliberate indifference Estelle, 429 U.S. @ 104-105, furthermore, it is held that if that delay causes necessary medical treatment to be delayed for non-medical reasons a case of deliberate indifference has been made out, Ancata 7&9 F2d @ 704 11th Cir 1985, citing Archer supra. Moreover: the policy of deferring to the judgment of prison officials in matters of prison discipline and security does not usually apply in the context of medical care to the same degree as in other context, Todaro v. Ward 565 F2d 9 @ 54. Compare Bell v Wolfish 441 U.S. 520, 551 n. 32, 99 S Ct 1861, 1880 n 32, 60 L. Ed 2d 447 (1979)( deferring to prison officials judgment on means to control smuggling of money, drugs and weapons into prison; Also See Washington v Harper 494 U.S. 210, 110 S Ct 1028 (1990)." Also SEE: Howell v Evans, 922 F.2d 712 @ 723-24" (11th Cir 1991)(...instituting policy of delib. indiff..).
However "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.

See Townsend v. Jefferson County 582 F3d 1252 (11th Cir 2009).

Plaintiff, has, presented in his: Motion in Opposition, statement of Material facts in dispute, and his; Supp. Ex A, plaintiff Affidavit, and supp. Exhibits attached that, he Suffers from a Serious Medical Illness: Osteo Chandritis Dessicons, and Avascular Necrosis, (in addition to this serious illness, plaintiff also suffers from: Diabetes, and Plantar fachitis) Plaintiff's Complaint (Doc59) primary concern was replacement shoes for his Chronically, diseased, deterorated Knees.

Contrary to Doctor Crungus, Affidavit (Def. Ex Doc. 218-4 Ex D) statement, that, he did not intend to verbally or otherwise for plaintiff to recieve Spot Bilt shoes, or for the institution to purchase shoes, and his only intent was for the Secretary to find out if the brace clinic could send a similar pair of Spot Bilt Shoes, directly to the institution, because he did not know of any other way to expidite the shoes Spot Bilts... This statement in and of itself clearly supports plaintiff's position that on 12-12-07 Dr. Crungu had, proscribed that plaintiff recieve Spot Bilt Shoes. it was his intent if the Spot Bilts were sent directly to the instition, in an expedious way, that the shoes would be issued to plaintiff. Furthermore, the Spot Bilt Shoes, were requested by plaintiff due to the Shock in his Knees that the 10/24/07 shoes were causing See Formal grievance of 12-1-07, Request of 11-30-07 (Rec. Ex C-1-4,-10 . Nevertheless in accords with D.O.C. policy Dr. Crungu had requested that plaintiff be provided with Spot Bilt shoes to address plaintiff concerns with schock to his Knees. But Windsor who's duty it was to obtain the 12-12-07 request, for arguendo, learned that, Dr. Crungu would need to write out an Order, to have the shoes sent to NWFRC, and Windsor would then either her or the Doctor's Secretary or Windsor's Secretary would have to fax this Order. See (Motion in Opposition, p.14 p.14) (Interog. #2 @ #16).

10

But Windsor intentionally, refused to communicate this information to Dr. Cwugu. See (Doc. 178)

Then on, 1-16-08 Dr. Cwugu, issues a Brace Clinic Consultation for Plaintiff to recieve Spot Bilt shoes, it was Windsors responsibility to effectuate this Consult via, NWFRC- and RMC, directing either her Secretary or CHO's Secretary to fax Consult, however, this Consult sat un processed from 1-16-08 up to 3-21-08. Even with Windors, Knowledge of the prescribed care by physician. The Consult was denied Windsor had Knowledge that the institution would provide shoes (i.e. Order them from RMC to be sent directly to NWFRC) however Windsor took **"no action"** to obtain the shoes, nor did she alert or consult with Medical Providers, on the procedure to expite the shoe Order from RMC to NWFRC, for plaintiff to recieve the SpotBilt shoes.

Plaintiff repeatedly advised Windsor, of the pain he was experiencing in his Knees due to the shock from wearing the 10/24/07, plaintiff advised Windsor, of his Serious Medical Condition in his Knees, and the Fear of re-injury, plaintiff advised Windsor, of stabbing Sticking, clicking Feeling he was now experiencing due to wearing the shoes, advised Windsor of the fact that the shoes were to tight, did not absorb shock to his Knees, that the shoes caused him constant pain, were falling apart at the toes, and were decaying on the "inside bottoms due to water invasion. Windsor, refused to inform Competent Medical officials by Alerting or Consulting with them of plaintiffs Condition, Windsor, denied plaintiff the shoes based upon various Non-Medical Reasons, one being: "Policy Concerns" another being: Plaintiff does not met, the criteria to recieve the shoes based upon his Flat feet, or Neuropathy, (one being Keep wearing the shoes or purchase from canteen, even though plaintiff attached Canteen Catalog showing it does not have his size -denial based on Financial concern), out of time Frame to grieve issue of Brace clinic shoe issue... all obdurate non-medical reasons, by a non-medical personel.

11

Moreover, Dr. Peter Hienze Schaffer, on 10-28-08, at a Chronic Illness Diabetic Clinic, authorized for plaintiff to recieve "New Shoes" to re place the 10/24/07 shoes that Windsor refused to replace pursuant to Dr. Cuenga's 12-12-07 proscribed replacement, and the Utilization and Management, directions for the institution to purchase shoes. **See**: ▅▅▅▅▅▅▅▅▅▅▅▅ (Supp. Ex A, pp 21-22 @ # 55-59) Motion in Opposition) (Supp Ex B 10-11) (Statement of Material facts in dispute) (Doc. 59)

Then, on 10-31-08, ARNP Dowling, also in accordance with F.D.O.C. Shoe policy, Wrote Pass Health/slip Pass for plaintiff to recieve spot Bilt Medical Issued replacement shoes to be worn for one year. **See** (Ex Rec C-32(a)), (Supp. Ex A pp 21-22 @ # 55-59) Motion in Opposition, State Ment of Material facts indispute. **See** (Doc. 218-2) or (Doc. 222-1) (Doc. 218-4) (Doc. 59) F.D.O.C. Canteen do **not** sell spot Bilt shoes: (Ex Rec C-25, C-25(a)).

Then on 11-7-08, Nurse Wynn, on the verbal directive of Dr. Peterhienze Schaffer; (who had already on 10-28-08, requested that Plaintiff be issued New Shoes) told Nurse Wynn to place the order for the Spot Bilt shoes, (which ARNP Dowling had written Pass Health slip Pass for the Spot Bilts to be in his possession) Nurse Wynn, made phone calls, and placed the order for spot Bilt shoes to a Chanty Pleas, and forwarded the Chart to C. Pleas to order the shoes. Chanty Pleas was/is Windsor's secretary, and Windsor, would now have to approve the purchase or order of the proscribed Medical Care Spot Bilt Shoes, and have her secretary fax the order. (i.e. Windsor, would review plaintiff's Medical file, and determine if everything was Kosher and if not, she would Alert or Consult with Medical providers or if it was she would have the shoes ordered) see Interrog # **2** @ pp 10,12 @ # ▅ ¹⁵⁻¹⁶,²⁴ see Motion in opposition, statment of Material facts indispute, Supp. Ex **A** pp **21** @ # **55-58** (Def. Ex A) Supp. Ex A pp. 22-24 @ #'s 59, 60, 61, 62, 63, 64, 65

Even during this period that Dr. Schaffer and ARNP Dowlings Prescribed Medical care, Plaintiff had submitted a grievance # 0810-125-032 ■ Supp. Ex B9(a)(b), (B10, 11) ■ B-12, 13(a)(b), 14(a)(b), 15(a)(b), to Windsor. Windsor, ■ did not inform Dr. Rummel See interog # 3 @ pp 12. @ # 1 of the fact that Dr. Schaffer at a 10-28-08 Diabetic Clinic had prescribed plaintiff New shoes (Supp Ex B-10) or of the fact that ARNP Dowling had in accordance with policy written plaintiff health Slip/Pass, "to obtain Medical Issued Spot Bilts to replace the 10/24/07 Shoes." (Ex Rec C-32(a)) Nor did Windsor inform Dr. Rummel that plaintiff had already been to sick call for the shoes, and as a result, Clinicians, acting in accordance with F.D.O.C Shoepolicy had on 10-28-08, 10-31-08, and 11-07-08, requested Windsor's office to obtain Shoes. Windsor had Knowledge of this prescription because it was in plaintiff's Medical file (Supp. Ex 10-11) (Ex Rec C-32(a) Pass 10/31/08) Windsor had Knowledge of the pain plaintiff was experiencing on a Continual basis from wearing the shoes of 10/24/07

Windsors ■ intentional interference, with denying and causing a 20 month delay in plaintiff finally receiving the shoes, when all that was required to place the inital 12-12-07, shoe order, ■ was to notify Dr. Chung that an order was needed. And all that was required to place the 10-28-08, 10-31-08, 11-7-08 Dr. Schaffer and ARNP Dowlings pres ibed Shoe Order, was for Windsor to do so, or direct her secretary to fax order, or Windsor could have purchased the Spot Bilts online, directly from the Manufacture. From this evidence a reasonable juror could infer Windsor's response to Thompsons medical need for the shoes was so deficient as to constitute "an unnecessary and wanton infliction of pain" and that her attitude evinced deliberate indifference.

Furthermore, a reasonable jury could determine, that the "entries" in Thompson Medical Records and Copies of Health Slip Passes, Dated: 12/12/07, 10-28-08, 10-31-08

and 11-16-08, to: purchase Spot Bilts for Thompson; to obtain New Shoes, lass for Spot Bilts, Chart to C. Please, Windsors Secretary to order 12E Shoes, is evidence Reasonable juror could infer that Thompson had a medical condition which was diagnosed by several Medical physicians, and Clinician ARNP as mandating treatment. Thus inferring that the need for Spot Bilt or Dr. Comfort Shoes was a serious medical need for Eighth Amendment purposes, and that Windsor evinced an attitude ▨ of deliberate indifference, violating the Eighth Amendment.

Furthermore, Windsors failure to obtain prescribed care, caused a delay that not only caused plaintiffs serious Medical condition to worsen, as he had advised Windsor, that this would happen if the 10/24/07 Shoes were not replaced, but it also cause re-injury to his Knees. (i.e: the excessive delay caused by Windsor's deliberate indifference caused plaintiff to suffer detrimental effects as evidenced by plaintiffs Medical Records ▨ documenting his complaints of and treatment for pain... and injury which required, Narcotic Pain Meds prior to surgery, and surgery on both Knees. Both Short term and Long term injuries See: (Doc. 59) (Doc. 178), (Doc 184, 192, 194) (Doc 161 163-163-1) Statement of Material facts in dispute, Motion in Opposition (Supp Ex A, C-1, Thru C-40 ) Based upon Windsor's deliberate, callous, indifference, and reckless disregard for plaintiffs safety and health, this Court should deny Summary Judgment (Doc. 218)

## 4. Defendant is not Entitled To Qualified Immunity from Damages:

Defendant argues that the Doctrine of Qualified Immunity sheilds her from liability based upon the alleged-disputed fact- the she was acting under F.D.O.C. Shoe Policy when denied to obtain prescribed Medical Care, and that No physician had prescribed the replacement of the 10/24/07 Shoes, until ▨ 10/2008, but See (Doc. 101, Def. 1st Summary

Judgment @ pp. 19-21 # Sec. C : Where defendant argues, that no physician 'at NWFRC had ordered replacement shoes, until 4-7-2009, Dr. Richardson, contrary to Windsor's new position on this matter (Doc. 218)

The doctrine of Qualified Immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights, of which a reasonable person would have Known" Harlow v. Fitzgerald 457 U.S. 800, 818, 102 SCt. 2727, 2738, 73 L. Ed. 2d 396 (1982) This doctrine is intended to balance "the need to hold public officials accountable when they exercise power irresponsibly" and the need to shield officials from harrasment, distractions and liability when they perform their duties reasonably. Pearson v. Callahan ---US--- 129, S.Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (emphasis added)

As the Supreme Court has explained "qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability by attaching liability only if [t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" United States v Lanier 520 U.S. 259, 270 (1997) "This is not to say that an officials actions is protected by qualified immunity unless the very action in question has been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent" Anderson v. Creighton 483 U.S. 635, 640 1987 (emphasis added) As the Supreme Court has observed " the easiest cases dont arise. There has never been ... a §1983 case accusing welfare officials of selling foster children into slavery: it does not follow that if such a case arose the officials would be immune from damages [or criminal] liability." Lanier, 520 U.S. @ 271 (citation omitted)

The Eleventh Circuit Court of Appeals held in: Hope v Pelzer 240 F 3d 975 (11th 2001) that: "'the federal law by which the government officials conduct should be evaluated must be pre-existing, obvious and mandatory,'" and established, not by "'abstractions,'" but by cases that are "'materially similar'" to the facts in the case in front of us. Id @ 981." However, on cert review, by the U.S. Supreme Court Hope v Pelzer 122 S.Ct. 2508, ▉▉▉ 536 U.S. 730 @ 739-741, 153 L.Ed 2d 666, held that the Eleventh Circuits, requirement that facts of previous case be "'materially similar' to Hopes situation" 240 F.3d @ 981. This rigid gloss on the qualified immunity standard, though supported by (11th) Circuit precedent is not consistent with our cases..."

The Pelzer Court went on to say/hold: "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful," Anderson supra @ 640, 107 S.Ct. 3034" Id. @ 270-271, 117 S.Ct. 1219 (Citation omitted). Our opinion in: Lanier thus makes clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances. Indeed, in Lanier, we expressly rejected a requirement that previous cases be "fundamentally similar" Although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with "materially similar facts" Accordingly, pursuant to Lanier the salient question that the Court of Appeals ~~ought~~ to have asked is whether the state of the law in 1995 gave respondents fair warning that their alleged treatment of Hope was unconstitutional..." ▉▉▉

16

Saucier v Katz 533 U.S. @ 201, 121 S.Ct. 2151 (2001) mandated a two-step process for lower courts to follow in resolving qualified immunity claims. First, the court had to decide whether the facts ▓▓▓▓ that plaintiff alleged showed a violation of a Constitutional Right. Id. Second, if the plaintiff satisfied the first step, the Court had to determine whether "the right at issue was 'clearly established' at the time of the defendants alleged misconduct" Pearson, 129 S.Ct. @ 816 quoting Saucier 533 U.S. @ 201, 121 S.Ct. 2151)

The Supreme Court revisited Saucier's mandatory two-step inquiry in Pearson, id. 129 S.Ct. @ 815-18. The Court held that while the Saucier process is often appropriate, "it should no longer be regarded as manda-tory": rather "[t]he judges of the district courts and the court of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand Id. @ 818.

In the case at bar, the Court, prior in (Doc 178), analysised the qualified immunity defense in accords with, the standard of: "a finding of deliberate indifference necessarily precludes a finding of ▓▓▓▓ qualified immunity, prison officials who deliberately ignore the medical needs of inmates cannot claim that it was not apparent to a reasonable person that such acts violated the law: Hill v DeKalb 40 F.3d @ 1186.

This Court found that, based upon, the evidence sufficient evidence subm-itted by plaintiff that, a reasonable juror, could infer whether: 1) Plain-tiff had a serious Medical Need, based upon the Dr. Kiungus 12-12-07 directive to purchase Spot Bilt Shoes, 2) ▓▓▓▓ Windsors, failure to obtain those shoes, even with the knowledge of serious Risk of harm to plaintiff if he did

not recieve the shoes, ██ 3) Windsor's obdurate response to plaintiff's complaints of pain due to the shoes interalia, that Windsor had evinced an attitude of deliberate indifference, 4) caused plaintiff to suffer unnecessary and wanton infliction of pain, ... a detrimental effect...

Wherefore, based on this evidence this court denied defendant's claim of qualified Immunity, the defendants, have now by Order of this Court filed a Second Summary Judgment, claiming Qualified Immunity Based upon the defendant acting under discretion of Policy (Doc 218-2,4) But See: Wilson v Taylor 733 F 2d 1539 (11th Cir. 1989): officials Policy can violate Constitution...

Initally as stated above, a finding of deliberate indifference necessarily precludes a finding of qualified immunity. Hill supra id @ 1186

Defendant has now submitted an Affidavit from Dr. Johanson, and mainly Dr. Ciungu: who claims... imphausiably claims, that he did not order for Spot Bilt shoes to be ordered or purchased for plaintiff, in an attempt "Bold attempt" to nullify this Courts Determination, of any serious Medical need, that mandate treatment, anulling any inference to a 8th Amend. violation. (Doc 178 @ 14). Never the less, it is undisputed, that, Dr. Peter Hienze Schaffer, and ARNP Dowling, on subsequent dates supra, prescribed that plaintiff be issued New shoes/Spot Bilts to replace the 10/24/07 shoes. and Windsor again through deliberate intentional acts, refused to obtain the physician prescribed Care - in accordance with the F.D.A.C. Shoe Policy, authorizing Clinicians to prescribe Soft Shoes (Doc. 218-2, 4). There fore, again it could be inferred that the 8th Amend. was violated by Windsor's failure to obtain the prescribed care. See (Supp. Ex A pp 1-40) (Doc. 59 @ # 7, See A-E)(ExRec A p. 1-34 # 1-102)

Futhermore The evidence produced by plaintiff clearly shows, that (which is this Courts next step in the Saucier/Pearson analysis of qualified imunity) was the right clearly established to put put govern-

18

ment official (reasonable persons on notice) that their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.

Plaintiff has presented evidence, of (3) three reasonable persons, in the same position as Windsor occupied: Health Service Administrator's Debbie Hartsfield, Amy Street, and Jerome Calhoun, whom all were faced with the same similar circumstances, of plaintiff's request for replacement shoes. All (3) acted in accordance with Policy of their: Job Duties and Responsibilities, pursuant to F.D.O.C office of (Appx1) Health Service Administrator, and immediately, notified, informed, Alerted or Consulted with the appropriate Medical providers of plaintiff's com-plaint, Hartsfield, even went as far to resolve a 2 year old complaint. They acted within their discretion. Where Windsor, failed to alert or inform Consult with Medical Providers, nor made any attempt to ██ resolve an, extremely, exposed problem. See (Supp. Ex A pp. 1-40) ████ See (Motion in Opposition To Summ: Judg. p. 22 #51, but generally see entire OpiNotn.)

Windsor, was not acting within her discretion because she also done the same acts to (3) other inmates, see (Johnson, Spivey, Hayhard Depos/Declaration, Ex Rec) Defendant claims that she did not ████ commit any Constitutional violation, because pursuant to F.D.O.C Shoe policy, an inmate requesting replacement shoes may only be issued a pair of the shoes on an annual basis unless a supervising physician determines that a replacement pair is necessary (Doc 218, pp. 22) (Def. Exhibits B-D) The record is clear and convinc-ing that, Dr. Cwangu did in fact determine that plaintiff, fit the criteria within F.D.O.C. Shoe policy exception rule to the one year-one pair per inmate. When (notwithstanding his testimony to the contrary) he re-quested that a pair of SpotBilt Shoes similar to the pair, plaintiff recieved in 2006, be sent directly to NWFRC, and how this was to be expidited

So plaintiff could recieve the requested replacement shoes he sought in his 12-1-07 Formal grievance See (Doc. 218-4 Ex D) and (Rec Ex. C-2 2(e)) Moreover, the 12-12-07 authorization by Dr. Ciungu, substantiates this intent. These Spot Bilts were to replace the 10/24/07 shoes. But Windsor deliberately refused to inform Dr. Ciungu that all that was needed was a Order to expidite the Spot Bilts Directly to NWFRC.

The following year 2008, the record before this Courts Clearly and undisputedly, shows Dr. Schaffer M.D., and ARNP Dowling prescribed the same Spot Bilts, to replace the 10/24/07 shoes. (Supp. Ex A) (Statement of Material facts in dispute) (Motion in opposition) (Doc. 59) (Rec. Ex A) Clearly Windsor, was the one to obtain the shoes, but she intentionally interfered, denied, delayed and refused to ▮ obtain the prescribed Care. id (Ex Rec C-32(e)) (Supp. Ex B10-11)

Defendants claim that there was no Constitutional right clearly established regarding the denial by an administrator of replacement shoes issued by health services... The preexisting clear established law which may be "highly Fact Specific" must place the official on fair notice that their behavior is unlawful." However ▮▮▮▮▮▮▮ Hope v. Peltzer has clearly Stated: The Eleventh Circuit requirement that facts of a previous case be "materially similar" to Hopes situation ... This rigid gloss on qualified immunity standard though supported by (11th) Circuit precedent is not consistent with our cases.

In Lanier supra. the Supreme Court held: "Our opinion in Lanier thus makes clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances..."

As the defendant states, There is no cases pertaining to an administrator denying a replacement pair of special shoes to an inmate that already

has a pair of special shoes.

To be clear, It is well established: that the government has a consti-
tutional duty to provide minimally adequate medical care to prisoners. Harris
v Thigpen, 941 F.2d 1495, 1504, (11th Cir 1991)

It is well established that: "deliberate indifference to serious medical needs of
prisoners, constitute the unnecessary and wanton infliction of pain proscribed
by the Eighth Amend. Estelle supra quoting Gregg v Georgia 428 U.S. 153, 173
96 S.Ct. 2909, 2925, 45 L.Ed. 2d 859 (1976)

It is well established that an official acts with deliberate indifference when he
intentionally delays providing an inmate access to medical treatment: see Lancaster
v Monroe County Alabama 116 F.3d 1419 (11th Cir 1997)

It is well established, and the law was clear in ▓ 2007 that prison officials
have an obligation to take actions or inform competent authorities once the official
have knowledge of prisoners need for medical care. Waldrop v Evans (11th Cir 1989)

Moreover some conduct is so obviously contrary to constitutional norms
that even in the absence of case law, the defense of qualified immunity
does not apply. "When ... the officials conduct lies so obviously at the very
core of what the [Constitution] prohibits that the unlawfulness of the cond-
uct was readily apparent to the official, not with standing the lack of case
law" the official is not entitled to ▓▓▓▓▓ the defense of qualified imm-
unity" Proester v City of Rivera Beach, 208 F.3d 919, 926 (11th Cir. 2000)
See: Stritch v. Thornton 280 F.3d 1295 @ 1303-05 note 9, (11th Cir 2002)
 See (Plaintiffs Memorandum of law Rec. Exibit Doc. 163)
Wherefore, the defendant was on notice that her actions were in violation
of clearly established laws - not with standing - no law regarding specifically

about a Health Service Admin. intentionally interferring, and failing to provide prescribed Soft Shoes/Spot Bilts. It is enough, that (3) three Similar Heath Serv. Admin. confronted with similar facts of Complaints about replacement Soft Shoes, took action to see that plaintiff recieved Shoes or consult, They were aware due to their Job duties and responsibilities that failure to act may result in denying a prisoner prescribed Medical Care, posessing a substantial Risk of harm to inmate.

Hence this Court should deny defendants defense of qualified immunity.

5. Plaintiff has met his burden in Establishing a Cognizable Physical Injury, emotional suffering, unnecessary wanton Pain - Short and Long Term.

The record before this Court undisputedly and without a shadow of doubt, beyond the perponderance of evidence, unequivocally shows plaintiff suffered actual physical Injury. (See: Supp. Ex A) (Supp Ex's C, C-1 -C-40)

Plaintiff suffered pain, First in the Short term, then it was prolonged into long term everyday he wore the 10/24/07 Shoes over a 20 month period Plaintiff has had in both Knees, his meniscus partially removed, torn cartledge, and grooves in bone. Clearly this is a cognizable injury to recieve requested damages, this was directly related to Windsor's conduct of intentionally interferring, and delay proscribe medical care, That was motivated by a reckless and callus indifference to plaintiff's federally protected Rights. See Washington v Dugger 860 F.2d 1018, 1021 (11th Cir 1988) Brown v. Hughes 894 F.2d 1533 (11th Cir 1990) In re Kemmaler 136 U.S. 436, 447 10 S.Ct. 930, 34 L.Ed. 519 (1980), McElligott supra Boretti v Wiscomb 930 F.2d 1150, 1154-55 (6th Cir 1991), Johnson El v. Schoermehl 878 F.2d 1043, 1055 (8th Cir 1989) holding delay in medical care that for condition that is "painful in nature" is actionable") Wharton v. Moreland 899 F.2d 1168, 1170 (11th Cir 1989) Glenn v Copeland. F.Supp. 2d 2006, WL 1662921 N.D. Fla (June 19, 2006): Farrow v West supra.

Plaintiff's request for damages of Compensatory and punitive is
actionable, because plaintiff has submitted overwhelming evidence
of physical injury to recover mental or emotional injuries suffered while
in custody persuant to **42 U.S.C. § 1997e(e)**. See also (Doc. 178 @ 15)

Wherefore this Court should deny defendant's claim that plaintiff is not
entitled to damages, due to failure to establish any cognizable Physical injuries
See (Doc. 59, 178, 184, 192, 199) (Supp. Ex A) (Supp. Ex C-1 -C-41) (Ex Rec. A)

## 6. Plaintiff has clearly shown this Case Warrants Injunctive Relief.

Finally the defendant contends that plaintiff's request for injunctive
relief is moot because plaintiff has recieved "orthopedic shoes" he desired
1. Plaintiff has not recieved 'Orthopedic Shoes', as is defined by F.D.O.C.
Shoe policy (Doc 222-1) Plaintiff has recieved Athletic Shoes... It's
clear that plaintiff suffers from a serious Painful Medical Condition: Osteochon
dritis Dessicans, Avascular Necrosis - This disease, is not recognized by the
defendant's Employer Office of Health Services, it may be that plaintiff actually
need Orthopedic Shoes to better address his Medical Condition; as opposed
to Athletic Soft Shoes, clearly plaintiff is **not** athletic.

2. The defendants have failed however to carry their 'heavy burden'
of showing that plaintiff will recieve the appropriate size, shock absorbent
Shoes in the future to prevent unnecessary infliction of pain and injury.
When he makes a reasonable request for the shoes, and that ▮▮▮▮ Def.
will not return to its denial, delay of the shoes. if plaintiff's injunctive
claim is dismissed see **Friends of the Earth, Inc. v ▮▮▮▮ Laidlaw
Environmental Services, Inc** 528 US 167, 189 (2000), **U.S. v. W.T. Grant Co.**
345 U.S. 629 632-33 **(1953)**

3. As of 10-6-10, plaintiff was seen by Clinician ARNP Havens, who
at the Medical Consult, basically advised plaintiff that he does not meet the

criteria to recieve Soft Shoes, for his Knees/osteochondritis Avascular Necrosis, despite the fact that (Doc 218-2) states that Soft Shoes are issued for **post Surgical Recuperation**. Plaintiff has had bilateral partial Meniscurectomy Shaving, Smoothing of bone, and removal of torn cartiledge. Ms. Haven said I must have Significant Foot deformity. visible.

4. Its clear that, this Court needs to issue an injunction, to prevent irreplatable injury that will occur unless injunction is Issued. that is, Ms. Haven ordered the Hight Top Shoes ▉▉▉▉ 12.5 with on 10-6-10. I have written request to recieve the Shoes to date - 10-27-10, they have not been issued. The Shoes were ordered because the heels of the 8-24-09 shoes have developed an slight angle, and the air Shock chamber, has lost its covering of sole due to contact with coarse side walk when plaintiff is moving himself about in the wheelchair. Ms Haven viewed the shoes and made the determination to order the shoes.

5. This issue is ongoing since approx 1998, the hassels of obtaining Shoes for protection of my Knees. Other inmates are also being denied proper foot wear for reasons unrelated to medical issues. This Court needs to issue an Injunction to F.D.O.C. Office of Health Services to acknowledge plaintiff **Osteochondritis/Avascular Necrosis**, as a Serious Medical Condition, that necitates the wearing of the appropriate Shock absorbant Shoes to prevent injury and unnecessary pain and suffering That the shoes are to be issued, without delay, hinderance, and as long as plaintiff is incarcerated, because his condition is degenerative, it only gets worse until Full Bilateral Knee Replacements. Plaintiff has a **hole** in both Femur bones, per Orthopedic Surgeon Dr. Klienhans, and **Dr. Lord**. Finally the 11th Circuit has held: we conclude that the district Court erred in applying the heightened pleading Standard to Randals complaint. After **Iqbal** 556 US ___ 129 SCt @ 1943 (2010) it is clear that there is **no** "heightened pleading Standard" as it relates to cases governed by **Rule 8(a)(2)** including

24

Civil Complaints. Fed Law Weekly Vol. 22 # 28 B: C1050, July 2, 2010
Randal v. Scott. Plaintiff has plead facts, for a claim of relief that is plausible
on its face ... See (Doc 161 pp. 17-24) Where Pure plaintiff request that this
Court does not Foreclose plaintiffs request for Declatory and injunctive
Relief See (Doc.178 p.15,18) (Doc. 184,192,194) '163- 1631, Supp Ex
A, (Ex Rec A) (Statment of Material facts in dispute) Motion in oppossition
To 2nd Summary Judg. Plaintiff reasserts, affirms, his injunctive Relief Sought in (Doc 161, 163)

## CONCLUSION

Accordingly, based on the foregoing, Defendant Windsor, is not
entitled to qualified Immunity and this Court should deny Defendants
Second Motion For Summary Judgment. It is so Prayed.

Respectfully Submitted By

Plaintiff- Pro-se

959252

RMC - P.O. Box 628

Lake Butler, Fl. 32054

## CERTIFICATE OF SERVICE

I hereby Certify that a true and correct copy of the foregoing
has been furnished to Mr. Marcus O. Grape,△ The Capitol PL-01, Tallai Fla.
32399-1050, via U.S. Prepaid Postage, by placing in prison officials hands for
delivery. On this 26 day of October 2010.

/s/ _____

On this 1 day of November 2010

Pro-se # 959252

△: See footnote 7, in Motion To Strike pg. 14, unable to serve copy to A.G.

Also See Notice To Court filed Nov. 1 2010

Certified Return Receipt # 7000 1670 0011 5106 6517          25