(ii)

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

Melvin Bernard Thompson
    Plaintiff Pro-se

RECEPTION MEDICAL CENTER
DATE: 11-1-10
INMATE INITIALS: ___

v.

Case No. 5:09 cv 73 RS/EMT

Monica McCall Windsor
    Defendant

## Plaintiff's Statement of Material Facts In Dispute
### (Pursuant to Local Rule 56.1 A)
### (Northern District)

Comes now the plaintiff Pro-se and files statement of Material Facts which plaintiff contends that there exist a genuine issue to be tried, states that these facts below, are in dispute and controvert the defendants/Moving Parties statement of undisputed material facts.

### Preliminary Statement of: Pro-se Litigant:

Plaintiff hereby asserts that, he is confused as to, his actual responsibility within this instant statement. (i.e.: plaintiff within his Motion For Opposition To Defendants SECOND Motion For Summ. Judg. Filed his incorporated Statement of Material Facts Indispute Controverting defendants statement of Undisputed Material facts, because, thats what he thought he must do. But the Local Rule 56.1A States this Statement must be filed Seperately - but the defendant did not file its statement Seperately in (Doc. 218). However, plaintiff will reallege the same† Controverted/disputed Material facts in dispute below as he done so in his Opposition Motion pages 3-25, in hopes that this is what the Court and rule is requireing him to do.[1] But, plaintiff will condence and refer to eliminate verboseness and redundancy,[1] which will waste this Courts and Counsels time and resouses. If this is the incorrect way, Plaintiff request that this

†: Not verbatim

1

Filed 1104'10 USDCFlnJAM1046

(ii)

will strike this statement of material facts indispute, with out prejudice to refile it correctly - with clarification on plaintiff's errors, wherefore plaintiff affirmatively states that, he is very confused on how this should be formated,[1] or worded, he is concerned about, verboseness, and redundancy... before this Court.

1. Plaintiff alleges, that F.D.O.C. shoe policy, is vague, and affirmatively infringes upon the Constitutional Rights of an inmates ability to recieve medical care. And that, the institutions - independantly do not follow the "script" (at all times) when issuing shoes, some inmate who donot have any medical valid reason to recieve the shoe - actually recieve them and individuals who do have medical valid reasons, do not recieve them. See (Motion in Opposition To Def. Second Summary Judgment pg's 3-8, @ #'s 1-14 p. 23-24 @ #'s 53-57, generally: pg. 1-24 @ #s 1-57. cf: (Doc. 218 p. 3-7 @ #1-9) see: (Johnson, Spivey Depos, and Hayland, Wrights Declarations) (Supp. Ex A pp. 1-40)

2. Plaintiff hereby states disputes that Windsor is only responsible for that grievances and request are answered. (Doc. 218 p. 7 @ #10) Windsor is also responsible for the purchasing and obtain special shoes when a Doctor (or Clinician) ARNP, orders or reccomends said shoes for an inmate, and if a order is not present in the inmates medical file, Windsor under her job duties and responsibility, must alert or consult with a Medical Provider to resolve any problems, that would hinder or infringe upon the inmate, not recieving the authorized Medical Care. See (Ex Rec. Appx 1; Doc 101 @ 6; Doc. 163, Appx. 1; Def. Ex A) See (Opposition Motion - herein after: (OP-MOTn) pg. 1-24 @ #1-55)

3. Plaintiff hereby disputes (Doc. 218 p. 7-8 @ 12-15) In that. it was not on 2-13-06 that I was diagnosed by ARNP Wilson, for the first time to be fitted for foot

---

N1: plaintiff hereby advises the Court, that when a reference is made to a particular pg. and numbered paragraph. that plaintiff is also, referencing this Court, to the appropriate deposition, affidavit, interrogatory, admissions and any other source already sufficiently detailed to permit the court to readily locate and check the source. See N.D. Local Rule 56.1A.

Orthotics based on a provisional diagnosis of Plantar facitis,...and that the consult was not approved by the CHO. First, during my periods @ Jefferson C.I. it was at times, that ARNP Wilson, was the only clinician on the premises. "there were times" that No CHO or Physician was treating inmates ▓, i.e. We didn't have a doctor to treat us. ARNP was our doctor. Anyway, I was first Diagnosed by Dr. Carlos Giama, Neurologist on November 25, 2003, and thereafter, 2 more Medical Doctors including a Podiatrist. ARNP Wilson would not process my specialty recommendation for follow up of 2003 and Podiatrist 2004 request for Orthothics ●, until 2006, after I filed grievances against ARNP Wilson. See (Op Motn. p. 8 @ #15, and p 22 @ # 51)

4. Plaintiff hereby disputes (Doc. 218, p. 9-10 @ # 16-18), upon my arrival @ NWFRC-ARNP Carrol Clinician - after re-evaluating my passes, and Medical History, of Osteo-chon. and plantar facitis, reissued my pass for soft shoes. (2-20-07 arrival date) Then on approx 10-11-07, I asked a Nurse on how to go about receiving replacement shoes, she advised me, I had to go thru: Health Service Administrator Ms. Street's office* to obtain the replacement shoes.* On 10-13-07 I sent request to Ms. Street HSA, on 10-16-07 Ms. Street, Alerted and Consulted with Dr. Chunga, who immediatly authorized-(No Physician Order was Written) to purchase the 10/24/07 Shoes. Albert Dr. Chunga, may have ▓ Authorized New Shoe purchase based on Diabeties (that A1C was 8.1 is not poorly controled by American Diabetic Association) Plaintiff clearly gave Knowledge in 10-13-07 request his primary concern for replacement shoes were his knees. See (Op. Motn. p. 8 @ # 16) Plaintiff verbalized his satisfaction, with recieving the shoes of 10-24-07, not his satisfaction, in fit, and shock absorbancy, clearly plaintiff could not be satisfied with the fit or shock absorbency until he had first walked and Broke shoes in. also plaintiff was transferred the next day rendering him unable to, advise - immediately advise Ms. Street, of the problem his 10/24/07 shoes were causing him (Op Motn p. 8 @ # 16 - (See Supp. Ex A pp. 10-12 ▓ @ # 20-29)

5. Windsor, denied a reasonable request for replacement shoes, and did not

---

*: per NWFRC. Policy, Past Practice, Custom. Supp. Ex A          3

alert or consult with Medical Providers. I filed grievance, as F.D.O.C. Policy and Procedure requires me to do so, regarding Medical Complaints. Nor is it Dr. Ciungu, or CHO's primary supervisory administrative responsibility for investigating and responding to medically related grievances. It is Windsors Lower Administrative responsibility to respond and investigate medically related grievances. See (Ex Rec. Appx 1) In fact Windsor has affirmatively stated she did not consult with Dr. Ciungu prior to responding to this 12/07 formal grievance (or the 11-30-07 request)(Doc. 163, Def's Resp. to Pl.'s First set of Interrog. #7) cf (Doc. 178) Dr. Ciungu only **signed** the grievance, and his actions on 12-12-07 and subsequently 1-16-08 clearly indicate regardless of his third party self serving vested interest Affidavits, implausible...(almost bad faith Affidavit) states, his intent could be inferred by jury that it was to provide me with Spot Bilt Shoes. See (Op Mtn. pp. 8-11 @ # 16-23), (Doc. 59)

6. Plaintiff also disputes defendants material facts in (Doc. 215 p. 10-11 @ #'s 19-20) Dr. Ciungu's Affidavit, that he knew of NO~~~~ way to obtain a pair of requested Orthopedic shoes, except via Brace clinic ~~~~~~ in an expidited way is in dispute. Because Dr. Ciungu, could have easily authorize Windsor, to utilize her P-card to purchase the shoes, as he had done for HSA streets plan to obtain new Shoes, or He could have, requested the Consultation to be processed as an Urgent or Emergency as Consults deliniate the Mode of treatment being requested. Or doctor Ciungu could have, requested plaintiff's shoes to be placed on a transport Bus, that arrives @ NWFRC, from RMC, on an almost daily basis. Or, Dr. Ciungu, could have had HSA Windsor to obtain a diffrent style, Soft shoe from the retailer walmart or K-mart, that had adequate cushioning to protect plaintiff's knees from schock. Regardless of what he would have chose to get plaintiff the Shoes, Windsor would not have done so as evident by the record by before this Court. When confronted with how to obtain the shoes via order, Windsor did not even relay this to Dr. Ciungu, and, when Dr. Schaffer and ARNP Dowling authorized New Shoes/Spot Bilts to replace the 10/24/07 shoes, under Windsor's tenure as HSA, who purchases and orders

4

said authorized medical care, she even refused to obtain them then. See (Op. Motn. pp. 8-11 @ #17-23.) J. Jackson's notation was in response to Dr. Ciungus requested care for plaintiff. Even Dr. Ciungus statement to the effect that: "He requested J. Jackson to find out if Brace Clinic could send a pair of Spot Bilt shoes directly to NWFRC that were similar to the pair Thompson recieved in 9/2006" - is evidence that a reasonable juror could infer that J. Jackson's notation was in affect correct, in that the Spot Bilt shoes that would have or could have been sent would have been given to Thompson - not some other inmate wherefore it was Dr. Ciungus intent for all purposes to have Thompson recieve Spot Bilt shoes as form of Medical Treatment to replace the 10/24/07 shoes. Contradicting his Affidavit that he did not verbally or otherwise intend to prescribe a pair of Soft Spot Bilt Shoes, nor to order the administration to purchase the Shoes for Thompson."

7. In fact, Dr. Ciungus 1-16-08 Consult, was also preceeded by My sister Leila Thompson calling NWFRC, speaking with Ms Foskey about me recieving the Soft Shoes, and Foskey advised that the shoes had "been ordered" and referred the issue to HSA Monica Windsor See: (Ex Rec. C-8) Also See (Leila's Emails Ex Rec. C-6, C-6(a) - C-6(L), corresponding with various NWFRC/FDOC officials about shoes being replaced inter alia - even speaking with Windsor via phone call several times, Windsor assured plaintiff would get shoes) The Consult was completed on 1-16-08 because Windsor had refused to obtain the shoes pursuant to a 12-12-07 authorization by Otto Ciungus, then Windsor, even refused to fax the Consult off to RMC for shoe order. Plaintiff spoke with his sister @ RMC, about Consult to get shoes.... when he returned to NWFRC, he contacted Medical after Medical had not called him out to sign Consult, then on 3-4-08 plaintiff signed Consult, but Windsor still would not fax Consult to RMC, until after 2 more phone calls by Leila Thompson to Windsor. The UM denied Consult on 3-26-08, and Windsor made a notation in her own handwriting @ top left hand corner regarding UM denial of Brace Clinic Consult see (Ex Rec. C-7, C-16) but plaintiff was not informed

about denial until approx 4-15 or 17-08, and filed grievance on Windsor which is the individual responsible to answer said grievance - but never responded or sent grievance back to plaintiff. No evidence has been presented by Defendant that J. Jackson has been, or is so incompetent in her secretarial duties, as to 1.) <u>misstate a directive from a treating physician, requesting treatment for a Inmate,</u> or 2.) <u>withhold medical related information, regarding the denial of requested specialty consult from the physician, or the HSA who directed Secretary J. Jackson to finally fax the 2 month old consult to U/M.</u> Wherefore it could be inferred by a reasonable juror that Windsor had knowledge of U/M's denial, and she was also informed that the institution could provide/purchase the shoes requested on the consult. Even so, with this knowledge Windsor <u>did</u> <u>not</u> alert or consult with any Medical provider this information. <u>See</u> (Op Motn. p. 8-11 @ # 16-23)

8. Plaintiff disputes defendant's undisputed material facts. (Doc. 218 pp 11-12 @ # 21-26) "After the signing of the consultation on 3-4-08, I was seen through various clinic consultations, for various health reasons (but, it must be noted as stated above, myself and my sister were actively through various F.D.O.C personell attempting to obtain the replacement shoes) in regards to complaints about my feet, and no notation was made concerning complaints about my feet until 7-22-08," is itself evidence that my main primary concern for replacement shoes were for the protection of my knees, from re-injury, and to stop the pain from shock to my knees that the 10-24-07 shoes were causing. I did however request on 7-3-08 @ RMC, Dr. Isra, at Chronic Illness Clinic, inter alia, for shoes, <u>and was told "Tallahassee" meaning, Office Health Services F.D.O.C. in Tallahassee" said not</u> <u>to give out special shoes.</u>" I also advised of my feet burning etc. but Dr. Isra, made a clinical diagnosis of Neuropathy. I also filled out sick call on 7-9-08 regarding feet and shoes. Dr. Isra, did not prescribed <u>any</u> medication for Neuropathy but told me there was nothing that could stop feet pain. (This Isra matter was per Court Order (Doc 58) declared improperly joined to Windsor matter) However

6

On 7-22-08, I saw Dr. Syed, @ a Chronic Illness Clinic, where he listened to me explain my feet problem of pain etc. I told him of ISIA's diagnosis of Neuropathy, and that no pain meds could elieviate pain in feet. It was then that Syed, noticed dark splotch patches on my bottoms of feet. He did not reccomend shoes - (because pursuant to NWFRC-MU and Annex pattern of practice, policy or custom, an inmate is directed 1) to obtain replacement shoes, you must go thru office of Health Service Administrator, 2) as posted on paper on cabinets and walls in exam rooms, an inmate may not discuss any other health related issues except the one he is in medical at that time for - which was my diabetics - and its complications to feet 3). I was still awaiting the response of hopefully being approved the shoes via and pursuant to Chap. 33 Inmate Grievance process) Dr. Syed prescribed Neurontin, of which, I never recieved (but for 2 dosages) and was interferred with recieving by Nurse Hall based on the fact that I write grievances on Medical Dept. See (Op. Motn. pp. 11 @ #24, and p. 15-16 @ #33-34) In addition it was Windsor who responded to the grievance - Not Dr. Syed See (Doc. 163, Ex Rec. C-19, 19(a)(b)(E), Doc. 163 Pl. Second Set Interog. #14) of (Doc. 218 p. 11 @ #24) disputed.

9. According to the American diabetic Association, a Diabetic, should wear the proper fitting shoes see (Ex Rec Appendix 9) describing Diabetic Neuropathies issued by U.S. Dept. of Health and Human Services, National Inst. of Diabetes and Digestive and Kidney Diseases @ Appx. 9-6, 9-7 clearly stating " wearing shoes that fit well and all the toes to move. New shoes can be broken in gradually by first wearing them for an hour at a time ..." Clearly this disputes defendants claim that Neuropathy is not associated with wearing any specific type shoes. This is also why the Policy set by F.D.O.C. is itself in contradiction of the guidelines of U.S. of Health, American Diabetics Association, standard of care for inmates with Diabetics.

10. defendant states @ (Doc. 218 @ p. 11 @ #23) my diabetics was above 7.0 levels prior to 7-22-08 consult w/ Dr. syed and that I refused his insulin a week before the consult. This is true and correct, however its also inaccurate in

7

that it is incomplete portrayal of why I refused my insulin. 1) It is NWFRC and D.O.C. policy that: if an inmate is receiving to much or to little insulin, he can refuse it's injection, by signing a refusal, which will be sent to Clinician for review, who will either ignore it or schedual inmate to come to medical consultation, at which time he can relay his reasons for refusal. Here the regular or whatever insulin was to much for me, I was bottoming out - crashing - low blood sugar attacks. See (Supp Ex A pp 25-33 @ #'s: 68-84) Furthermore this Operative Complaint is not about my diabetes as primary concerns for reciept of replacement shoes, this Operative Issue is primarily in relation to protecting my knees from reinjury and unnecessary infliction of pain. see (Supp A p. 1-2 @ # 1-3, pg. 9 @ #17) (Doc. 59)

11. As explained ~~supra~~ F.D.O.C's NWFRC - "Medical dept has a pattern of practice, policy or custom that forbids an Inmate from discussing any other medical issue than the one he is on callout for, and NWFRC-Annex, M/u had custom, pattern of practice, or Policy, that an Inmate must send request to HSA to recieve replacement shoes," wherefore on 7-25-08, plaintiff again sent request to Windsor given knowledge of his complaints with shoes, Windsor still refused to alert or consult with Medical provider. Windsor, states she discussed the issue with ARNP Koorman, but, plaintiff states, that Windsor was only repeating what ARNP Koorman placed on the Medical file, of the 4-8-08 visit. In fact, on the day I saw ARNP Koorman, (prior to learning U/M denied Consult) I did advise ARNP Koorman of the need for Replacement Shoes. Koorman left the room, and when she returned, she was visibly angered @ me, and did not say anything futher about the shoes. When I picked up my pass, it stated: I/m already has shoes in his possession. This is exactly what Windsor wrote on the 7-25-08 response. I then wrote back to Windsor on 8-5-08 explaining that the shoes Koorman was talking about - is the same 10/24/07 shoes

8

that are still in my possession, that inter alia are causing pain in knees, deteriorating due to water invasion. And further requested that since canteen did not sell my size in New Balance Shoes, could she allow my family to pay for shoes and send them in to me. I attached the canteen order form to my grievance of 8-5-08 giving Windsor knowledge of this fact. Windsor responded that my options were to keep/continue to wear 10/24/07 shoes or purchase from canteen. See (Doc. 101, Ex Q, Doc. 163, Def's Res. to Plts. Request for Admissions #18B, Doc. 163, Ed Rec. C-25, C-25(a)) Windsor did not Alert or Consult with any Medical Provider when she issued this response. See Supp (Ex A pp. 19-20 @ #'s 45-54)

12. I also dispute that F.D.O.C. policy that does not allow family to send in shoes, stopped in 2007 due to security concerns. In mid 2008 while @ RMC West unit I came into contact with inmate Jessie Racien or Raceen or Racen, who was housed at Century C.I. He was wearing a pair of New Balance shoes that are not sold on the canteen, and he had, had knee surgery on his knee. I asked where he got the shoes from and he told me, his Doctor @ Century C.I. had allowed his family to send in shoes for him. Also. F.D.O.C. allows, family members to send in wheel chairs for inmates as well - Surely a wheel chair should present more of a security concern than a pair of shoes that can easily be searched for contraband. I declare under penalty of perjury that this statement is true and correct, and I have personal knowledge that Racen told me this ▓▓▓▓ 10/28/10

13. Plaintiff disputes defendants allegations of (Doc. 215 p. 12-13 @ # 27-28) At all times, I sought replacement shoes, via, clinicians, and sick calls I had no power over staff to note or write in charts, my requesting replacement shoes. In fact, this was the reason of the investigation by Office of Health Services, and My sister Leila Thompson and Dr. Patrick Brown and his employee Johanne Terrel. See (Rec Ex A, pp. 5-8 @ # 11-20 )[1]

9

also, see (Ex Rec. C-5, C-6, C-6(a) thru C-6(e) Emails). We tried every thing humanly possible via various individuals to have me recieve the replacement Shoes. But Windsor, who's responsibility it was to purchase or order the shoes - deliberately refused to do so. Even when on 10-28-08 Dr. Schaffer, authorized new shoes to be given to me, that authorization was not followed, then again on 10-31-08 ARNP Dowling Clinician, wrote a health Slip/Pass for me to recieve Spot Bilt Shoes, (that cannot be ordered by inmate from canteen) that was not processed. These orders were written on Windsor's tenure of HSA @ NWFRC. I was seen by ARNP Dowling who is a Clinician - Not: (a Nurse) on 10-1-08, who at that time, of viewing my "active file" did not note any prescriptions or reccomendations for Soft Shoes - Spot Bilts, I told her that, I had been prescribed them in the past due to my knees, she told me she would review my other charts/files for speciality reccomendations for Spot Bilts. As I recall I did take off my shoes at this consult with Clinician Dowling. Never the less she wrote a pass on 10-31-08 for me to recieve Spot Bilts. As F.D.O.C Shoe policy states, Clinicians can issue pass for Soft Shoes for inmate to possess due to security reasons, however, surely Clinician Dowling wasn't issuing pass for me to wear Spot Bilt Shoes if I purchase them from canteen - when canteen doesn't sell Spot Bilts because Spot Bilts are Medical Issued Shoes. Windsor, had knowledge of these Authorization, because again the chart was given to her secretary to order the Shoes - Spot Bilts, but Windsor would first have to approve order. See (Op. Moth. pp. 11-15 @ # 24-35) See (Also. Ex Rec. A p. 1-34).

14. The above, clearly establishes, that 2 more Clinicians who have the authority of F.D.O.C. to proscribe treatment for inmates, did so for plaintiff. (i.e. A reasonable juror, could infer that. Plaintiff had a Medical condition which was diagnosed by a physician as mandating treatment. As evidenced by the Notation

10.

entry in plaintiff's Medical record, by Dr. Peter Henze Schaffer on 10-28-08, and the subsequent Notation on 10-31-08 by ARNP Dowling's issuance of a Health/Slip Pass for the very same Spot Bilt Shoes, that J. Jackson on 12-12-07, noted that Dr. Ciungu had requested to be purchased, and Windsor then and Now, whose responsibility to purchase or order the Shoes- deliberately refused to do so. She allowed plaintiff to suffer pain and injury See (Supp Ex's C-1 thru C-41. Also See (Supp Ex A p. 1-40 @ #'s 1-96)(Doc. 178) See (Op. Motn. pp. 11-15 @ # 25-32., (Doc. 59 Complaint) See (Supp Ex A pp. 21 22- @ # 55-59 specifically). Also See (Ex Rec A pp 14-17 @ # 50-58)

15. Plaintiff disputes defendants allegations (Doc. 218 p. 13 @ #'s 29). Plaintiff was seen by Doctor Salvadore and Nurse Hall. At no time did Doctor Salvadore examine my feet, he was there specifically to conduct Prostrate exam, which was positive, and he and Nurse Hall tried to coerce me to refuse Neurontin and accept Tegretol. I did not consent. I did not demand Boots, Dr. Salvadore never told me to purchase shoes from canteen. See (Op. Motn. p. 15-16 @ #'s 33-35) Also See (Ex Rec. A pp. 14-17 @ # 50-58)

16. On 11-25-08, I was seen by Clinician ARNP Carrol, and I explained that the Lantis Insulin was causing me to have low blood sugar, and that I had not consented to Tegretol that Dr. Salvadore had prescribed. That I was prescribed Neurontin by Dr. Syed, and then Dr. Schaffer and I took it by consent and that's what I would take inter alia. See (Op. Motn. pp. 15-16 @ # 34-35). I explained the need for Shoes that had been authorized by Clinician Dowling and Dr Schaffer. and about the grievances filed against Salvadore and Hall, for interferring with prescribed care. id See (Op Motn. pp. 18-19 @ #'s 41-43) cf (Doc. 218 p. 13 @ # 30) disputed. ARNP Carrol re-prescribed the Neurontin, Hall/Salvadore retalitoriely discontinued.

17. On 12-7-08 I submitted Inmate request to Windsor to replace the ~~~~~~ 10/24/07 Shoes - since on 10-31-08, 11-6 and 7, 2008, Dr. Schaffer (also on 10-28-08) and ARNP

had authorized for me to recieve New Shoes/Spot Bilts. explain it had now been over the 1 year peroid, and the shoes were no longer wearable. The request was responded to on 12-12-08 by HSA Calhoun, who alerted or consulted with Medical provider ARNP Clinician Carrol, to re-evaluate my need for shoes. HSA, Followed F.D.O.C. HSA's Policy/Procedure; Job Duties and Responsibilities (Ex Rec. Appx. 1) and communicated with Providers to resolve this problem. Hence I was reevaluated by Clinician Carrol, who noted the grievances that had been written, and wrote Consult to Brace Clinic for replacement Spot Bilt or Dr. Comfort Shoes - Consult was denied, and Clinician wrote to have shoes, purchased or Ordered by Institution Per denial reason of Brace Consult, just had U/M done several Months prior with Dr. Cuvugus Brace Consult. See (Op. Motion pp. 16-17 @ #s 36-37) (Ex Rec A pp. 17-18 @ #60-63) cf. (Doc. 218 pp. 13 @ #31) - disputed

18. Then, On 12-31-08 I filed grievance due to retalitory Actions, in confinement, I was seen by Asst. Warden Brannon on 1-4-6-2009 who released me from the box where I had stayed since 11-12-08. See (Ex Rec. App. 18 @ #64) to approx 1-8-09, with No disciplinary reports, or Negative Actions entered into my file against me.

19. On 1-15-09 I recieved response back from the Thayer grievance (id pp 18 @ #65)

20. On 1-16-09 still not having recieved the shoes or any Knowledge about Brace Consult regarding the Spot Bilts replacement shoes I went to sick call, No information was provided about the Consult, but I did recieve a pass from Clinician Carrol Authorizing "Special Orthopedic/Soft shoes to be worn. I had a visitation with my family, where I had to wear the... literally deteriorated 10/24/07 shoes to visitation... On 1-18-09, I was told by Nurse Rudolph that I had to purchase the special orthopedic/soft shoes - which of cause the canteen didn't carry. On 1-19-09 I filed grievance to the office of Health Services Dr. Johanson's Asst. Secretary of F.D.O.C., against his Dept Director Patrick Brown, relating to Defendants Actions of failure to provide the shoes that: Dr. Cuvugu, Schaffer, ARNP Dowling/Carrol had prescribed for me to have. On Jan. 20, 2009, I was seen by Clinician Kariman

who reviewed file regard consult and shoes, and noticed that the order had **not** been put thru, and advised me that the issue was being investigated by Medical personnel and HSA. See (Ex Rec A pp. 18-20 @ # 65-69). I was transferred to Leon County Jail for Resentencing Hearing on 1-22-09 still not having recieved the _again_ for the 4th time authorized replacement shoes to replace the 10/24/07 shoes (id @ p.20 @ # 70). This disputes the factual presentation in Doc. 218 p.13 @ # 31 that, (i.e. the time line - defendants went from 12-15-08 ARNP Carrol's Consult denial - straight to Dr. Richardson 4-7-09 ordering of Dr. Comforts. In between this period, I still sought out authorized replacement shoes, that Windsor had failed to order per Dr. Peter Hienze Schaffer and ARNP Dowlings authorization, and now due to that inaction by Windsor, the issue was passed over to the new HSA, and Windsor's fellow co-workers, whom I had initially filed grievances on @ the Main Unit, where Windsor had first, interferred with failing to obtain Dr. Ciungus 12-12-07 spot bills, and where she would not initially fax the 1-16-08 Consult until 3-21-08... Due to Windsor's negative entries into my Medical record file, and her repeated denials to replace the shoes of 10/24/07 while HSA @ NWFRC Main Unit, her co-lower Administration Co-worker Ms. Foskey, took up the baton to continue Windsor's constitutional violation to deny me prescribed care. While I was away @ the County Jail from Jan. 22, 2009 - March 26, 2009. There was a concerted effort to prohibit me from obtaining the proscribed care See (Ex Rec. A pp. 20-31 @ # 71-96). Even when I told Dr. Richardson on 4-7-09 what had transpired with the whole scenario about Windsor and the shoe issue, and he told me, why he had denied the 1-15-09 shoe order of Clinician Carrol, because a lower level medical staff had come and told him I did not meet the criteria, and how the Warden Culpepper had told him never to agree with an inmate over a Nurse, so he stopped the shoe order, but now he was reording it due to I did meet the criteria. See (Ex Rec. A pp 20 @ #71, 72, pp. 21 @ 73-74, and pp 21-22 @ 75-76, 77). I still did not recieve the shoes. I then set out again with request grievances and personally speaking with HSA Calhoun (id pp. 23-24 e # 78-81) All the while incurring more pronounced pain in my knees, due to shock of 10/24/07

and having to wear BoBos periodically, "all due directly" to Windsor's initial and subsequent actions, of being deliberately indifferent to my pain and injury to my knees, due to wearing these... 10/24/07 shoes. See (Op. Motn. p. 17-18 @ # 38-40)

21. Having still not recieved the 4-7-09 authorized shoes, by CHO Dr. Richardson who had wrote, physicians order, utilized the relevant chronological Record of Health Care form, and wrote Pass Health/Slip Pass, and directed HSA to obtain shoes[3] - all in accordance with FDOC Shoe Policy: (Doc. 218-2 and 218-4, 222-1). I even tried to obtain the Canteen Supervisor to order New Balance shoes in my size and that to did not work See (Ex Rec. App. 20 @ # 72, p. 22 @ # 76, p. 25 @ # 86-87)

21. Then again on 7-10-09 @ Chronic Illness Clinic, again I advised Dr. Richardson that the 4-7-09 shoes still had not been issued to me. He again, requested for his proscribed care to be issued.[3] See (Ex Rec. App. 24 @ # 82) Yet I still did not recieve the replacement shoes, until I was transferred to RMC, and RMC medical staff, Nurse Hackbarth and Medical Warehouse Personel Ms. Nita Richardson, made repeated calls to NWFRC - Medical staff to find out why I had not been issued the prescribed shoes, but NWFRC Medical would not render any assistance on the issue. So, I was finally by God's Grace, issued the Shoes Dr. Comfort size 12EE on 8-24-09 @ RMC. See (Op. Motn. pp. 17-18 @ # 38-40) Also See (Ex Rec. App. 27-31 @ # 89-95) This also disputes/controvert (Doc. 218 p. 13 @ # 31) defendants undisputed facts that: On 4-7-09 Dr. Richardson ordered the Dr. Comfort shoes, and based upon that 4-7-09 Order I recieved the shoes on 8/24/09. Defendant has set forth an incomplete and inaccurate undisputed fact. Plaintiff based upon Windsor's reckless, and callous indiffrence and interference with proscribed care, set in motion a concerted effort of various NWFRC Medical staff lower level nurses to deprive me of proscribed medical care with a vicious disregard for F.D.O.C Policy, my Constitutional Civil Rights, and my health and safety, believing

---

N3: these shoes were **not** issued because of my diabetic Neuropathy, but because of my conversation with Dr. Richardson about the pain in my knees due to the 10/24/07 shoes.

14

that it would never come to the knowledge of anyone outside of their circle or confines of NWFRC. This is <u>not</u> an Isolated incident. <u>See</u>: (Johnson, Spivey Depo By Written Questions, and Haylards Declaration, @: Ex Rec.)

22. The defendants, bring forth its final erroneously: ~~a~~ statement of Undisputed facts, that: 1) I did not "<u>exhibit</u>" no injury within my lower extremities, following the period when I wore the 10/2007 shoes, based upon, the fact that @ the 7/10/09 Clinic Dr. Richardson noted my extremities were within normal limits, and Dr. Franco, review of X-rays on Knees found No fractures or dislocation... only changes associated with arthritis, and Dr. Gama did a neurological examination of me, noting gait was OK, then stating that, that meant I did not have difficulty with ambulation on 2-4-10." (Doc. 218 p.14 @ #32).

23. Plaintiff disputes/controverts these undisputed facts by stating and showing Verifying Medical Evidence, showing that, plaintiff made repeated complaints of pain he was suffering from wearing the 10/24/07 shoes, (i.e. initially Shock to his Knees (L-R), then as time went on, clicking, stabbing, stinging <u>inside</u> his Knees, causing him problems with walking and standing, to the prescribing of pain medications, over the counter, to: Narcotics prior to <u>any</u> surgical procedure, then to, the utilization of a Walker to a wheel chair, to Bilateral Surgery on his Knees, having suffered, torn Meniscus in both Knees, developed grooves and scoring on bones (femur) both Knees, and having to remove the bulk of the meniscus from Right Knee (still awaiting surgical Report on Left Knee) and was informed that a piece of Cartiledge had been torn aloose/dislodged in Left Knee requiring removal of Cartiledge and partial Meniscus. <u>See</u> (Op. Motn. pp. 19-21 @ #'s 43-49) <u>See</u> Also Verifying Medical Evidence of detrimental effect of the delay

N4: On 2-4-10, I was <u>not</u> walking. I had been placed in a wheel chair due to being unable to walk/ambulate, prior to that, I was as of Nov. 15, 2009 utilizing a Roller Walker to assist with Ambulation. See (Supp. Ex C-18- C-22) I object to the conclusory, statement of what, Dr. Gama ~~a~~ allegedly <u>meant</u>, besides I was in a wheel chair...

15

in recieving the shoes due to Windsors, initial and subsequent actions and inactions (Supp Ex C-1 thru C-41) set in motion a concert effort by other

24. Plaintiff states that, his injuries of pain, is not an objective type injury and one does not see pain, but feel it. See (Op Motn pp. 19 @ 43-44), the fact that Dr. Richardson didnt see any exhibit of plaintiff pain, that did not stop him from prescribing replacement shoes Spot Bilts.[3] The fact that Dr. Franco didnt see any fracture or dislocation on x-ray, did stop plaintiff from having pain, or having surgery to correct damage to knees[5] — despite Dr. Francos... review of an x-ray. Also, Dr. Grama's neurological examination was on plaintiff's wrist and arms, upper extremities — Not on my knees or legs, and as stated in footnote 4 supra: "I was in a wheel chair @ this 2-4-10 examination. Meaning: "I was not even walking when I came into the exame room to be seen by Dr Grama, I was rolled in a wheel chair and never once got out of it. (id @ p.19 # 44.) Also See (Op. Motn. pp. 20-21 @ # 45-49).

25. The defendants have also presented a undisputed material fact that, I am contributory to the constitutional violation of not recieving the shoes due to poorly controlled diabetes. I dispute this by stating my primary concern for the shoes being issued was to prevent re-injury to my knees, and That, there exist multiple factors, as to why I refused insulin, and as to why blood sugar levels were elevated See (Op. Motn: pp. 18-19, @ # 41-42) Furthermore it is also disputed that I did seek out replacement shoes via, Clinicians... See (Op. Motn. pp. 21-23 @ # 50-52)

Wherefore, it clearly is established that, there remain in existance, clearly disputed material facts of genuine issues in dispute — where reasonable jurors "triers of fact" could determine that a Constitutional Violation occurred.

Lastly: Windsor, claims, that, she was acting in accordance with

N5: or the worsening of plaintiff's condition ■ Osteo-chondritis / Avascular Necrosis

16

with F.D.O.C. Shoe Policy when she denied me my request for shoes, and that no physician had ordered shoes, and that she was acting under her discretion, and she had no knowledge of any risk to substantial harm that could come to me, and that I did not suffer any harm directly related to not receiving any replacement shoes, and that she did not exhibit a deliberate indifference to my medical need, because I lacked any need for medical care, and she is entitled to Qualified Immunity.

26. Plaintiff disputes thus these undisputed material facts of defendants, by stating: Windsor, not only denied/delayed, and interfered with the prescribed care of 12-12-07 of Dr. Cungu, "but" she (Windsor) deliberately, (acting outside her discretion pursuant to F.D.O.C. Policy and Procedure, pursuant to the Job Duties and Responsibilities of the office of: Health Service Administrator, for NWFRC Main Unit and Annex from: 11-30-07 thru 8-24-09) exhibited a reckless and callous disregard and indifference, to the authorized and prescribed medical care, issued from Dr. Peter Hieaze Schaffer M.D., and ARNP Dowling both Clinicians, when they in accordance with F.D.O.C. Special Shoe policy prescribed New Shoes/Spot Bilts, And the defendant does **not** place on the record, her reasons, for failing to obtain the shoes, per Dr. Schaffer and Dowlings authorized medical care. The Chart-Medical Record pursuant to F.D.O.C. Shoe policy, with Clinicians diagnosed form of treatment, was given to Windsor's Secretary to Order New Shoes/spot Bilts, to replace the 10/24/07 shoes. According to F.D.O.C. policy and Procedure, it is Windsors Responsibility to place the order or purchase the medical aid to wit: Spot Bilt Shoes. A reasonable jury could infer that plaintiff had a medical ~~serious~~ condition diagnosed by: 3 seperate Medical Providers, 2 physicians, and 1 Practitioner, that mandated treatment, that the defendant refused to provide thus, violating plaintiffs 8th Amend. Constitutional Rights, Supra and causing plaintiff to suffer the unnecessary wanton infliction of Pain.

27. Plaintiff has also produced, sufficient evidence of a genuine issue of material

17

facts in dispute, that Windsor, had knowledge of the risk or rather substantial Risk of harm, (and knowledge of the pain plaintiff was enduring) that could or would, worsen his medical condition (and in fact did worsen his condition of OsteoChondritis/Avascular Necrosis of Left Right Knees) if plaintiff did not receive the medically proscribed and authorized care. This is evident by the fact of Windsor's responses to plaintiff, via request forms and informal grievances, formal grievances, Appeals, E-mails from Leila Thompson. A reasonable jury could infer that Windsor's responses to plaintiff's complaints, were obdurate, and evinced an attitude of deliberate indifference to a serious medical need, and caused plaintiff to suffer unnecessary and wanton infliction of pain. Moreover, a reasonable jury could infer that Windsor's refusal to Alert and Consult with Medical Providers, pursuant to her Job Description and duties, to empliment procedures to resolve problems within the Health Services Dept, and to communicate with staff, clearly envinced an attitude of deliberate indifference, to plaintiff's serious medical needs, when all Windsor had to do was advise Dr.Crungy of the need for and Order to expidite the shoes from RMC, and all that was needed, to obtain New Shoes/Spot Bilt shoes, authorized, and prescribed by Dr. Peter Hienze Schaffer and ARNP Dowling, was for Windsor to authorize Charity Pleas to fax the Order to RMC, or for Windsor to do so herself, yet Windsor deliberately failed to do either. Supra See (Doc. 178, 59)(Ex Rec. App 1-34 @ #1-102)(Supp.Ex A entirely)(Def.Ex A) (Ex Rec C-1 thru C-40, D1-D22) Appx 1, 2)(Supp.Ex B-10, 11, C1-C41);

28. Plaintiff finally has presented an "overwhelmingly amount of sufficient evidence, of Verifying Medical Records", showing - undisputedly - that he has suffered a detrimental effect, due directly to Windsor's deliberate indifference in delaying the authorized and proscribed Medical Care, as evidenced by plaintiff complaints of pain and injury, and his treatment for pain, and his subsequent surgeries, on both knees, there is **No** documentation, nor will it or can it be provided by plaintiff or the defendant, that plaintiff, has ever

18

simultaniously, suffered. degeneration or injury to both knees. A reasonable jury could infer that the bilateral, degeneration and injury was a direct result of the wearing of the 10/24/07 shoes over a 20 month period with sudden and "repeated" shocks to plaintiff's knees. A reasonable jury could also infer that plaintiff not only suffered physical injury and pain, but emotional injury as well based upon the entire ordeal of trying to obtain replacement shoes, enduring the pain and injury with no relief in sight and the deliberate indiffrence, and concerted efforts put in place by Windsor and her Co-workers to, recklessly, callously, with evil intent to interfer and block all efforts and attempts made by plaintiff and his sister to obtain replacement shoes prescribed various times by physicians. id Supra (Doc. 59) Doc. 178, 184, 192, 194, 161, 163, 163-1)(Ex Rec C-1-C40, D1-D40)(Interrog # 1, 2, and 3)(Admissions, AA, BB, CC, DD)(Supp Ex. App. 1-40, · C1-C41) interalia (Appx 1-9)

29. Finally Jury could infer based upon, the Depositions by written Questions of Carl Johnson, and Glen Spivey, and the Declarations of : Julius Haylard, that. Windsor, was not acting pursuant to F.D.O.C Shoe Policy when she denied me the replacement of the 10/24/07 shoes, but that it was at the time of the alleged Constitutional Violation a; "pattern of practice or custom, @ NWFRC-M/U and Annex to willfully exhibit deliberate indiffrence to any inmate who, filed grievances or complaints against Windsor or her staff within the Medical Dept." Futhermore a reasonable jury could infer based upon these other inmates testimony, in addition, Inmate Richard T. Wright's Declaration, that as it stands, and its operation that: F.D.O.C Shoe Policy, is unconstitutional, in that it infringes upon the Constitutional rights of an inmate to recieve, Medical care, to wit: recieve Special shoes... and the policy unequivocally, cause an inmate to suffer unnecessary and wanton infliction of pain, and subjects an inmate to irreputable, substantial risk of harm, and injury . (Op. Mtn. pp. 24 @ # 55-57) Also see Op. Mtn. pp. 23 @ # 53-54)," i.e. FDOC Policy institutes Policy of deliberate indiffrence."

30. Based upon the forgoing, a reasonable juror could infer, that Windsor

19

was not acting within the confines of her discretionary duties, as health service administrators, especially in light of the undisputed fact, that, (3) three, other reasonable persons, in the same position as Windsor was: Health Service Administrators, when confronted with similar complaints from plaintiff - all 3: HSA Hartsfield, HSA Street, and HSA Calhoun, all Alerted and Consulted with Medical Providers to resolve the problem with plaintiff receiving Orthotics, and Soft Shoes, that appropriately fit his feet and absorbed shock to his knees, to prevent the unnecessary wanton infliction of pain, and the substantial Risk of injury. See Supra (Op. Memo. p. 22-23 @ #51) albeit HSA Calhoun, failed to obtain the shoes, he never the less Alerted and Consulted with Medical Providers of Plaintiff's Complaints.

## Conclusion:

Wherefore, Plaintiff has brought forth, genuine issues, of Material facts in dispute with the defendant's, statement of ████ Undisputed Material facts within (Doc. 218), as such plaintiff request this Court respectfully to deny defendants Second Motion For Summary Judgment (Doc. 218) in its entirety and in so doing, this Court should deny defendants claim of qualified immunity based upon deliberate indifference to plaintiffs serious Medical needs, and any further relief this Court deems just.    It is So PRAyed.

/s/: [signature] 959252

I hereby declare under penalties of perjury this is true and correct to best of my knowledge 10/28/10 ee

## CERTIFICATE OF SERVICE

I hereby Certify that a true and correct Copy has been furnished to ΔΔΔΔ Marcus. O. Graper. The Capitol PL-01, Talla. Fla. 32399-1050, via, U.S. Postage prepaid, by placing in prison officials hands ~~on this ___ day of October 2010~~

On this 1 day of November 2010
/s/ [signature]

RMC - MU
P.O Box 628
Lake Butler, Fl. 32054

ΔΔΔΔ See FN7 of Motion to Strike pg. 14, unable to serve AG:
Also See: Notice to Court Filed Nov. 1 2010.
Certified Return Receipt # 7000 1670 0011 5106 6517

20.